[No. S082570. July 30, 2001.]

BRIAN J. DONOVAN, Plaintiff and Appellant, v.
RRL CORPORATION, Defendant and Respondent.

COUNSEL

Brian J. Donovan, in pro. per., for Plaintiff and Appellant.

Donald Seth; Law Offices of S. Chandler Visher, S. Chandler Visher, Marie Noel Appel; The Harris Law Firm, Aurora Dawn Harris; Law Office of William E. Kennedy and William E. Kennedy for National Association of Consumer Advocates as Amicus Curiae on behalf of Plaintiff and Appellant.

James G. Lewis for Defendant and Respondent.

Manning, Leaver, Bruder & Berberich and Halbert B. Rasmussen for California Motor Car Dealers Association as Amicus Curiae on behalf of Defendant and Respondent.

Baker & Hostetler, Glen A. Smith and Megan E. Gray for the Times Mirror Company and the California Newspaper Publishers Association as Amici Curiae on behalf of Defendant and Respondent.

## OPINION

GEORGE, C. J.—Defendant RRL Corporation is an automobile dealer doing business under the name Lexus of Westminster. Because of typographical and proofreading errors made by a local newspaper, defendant's advertisement listed a price for a used automobile that was significantly less

than the intended sales price. Plaintiff Brian J. Donovan read the advertisement and, after examining the vehicle, attempted to purchase it by tendering the advertised price. Defendant refused to sell the automobile to plaintiff at that price, and plaintiff brought this action against defendant for breach of contract. The municipal court entered judgment for defendant on the ground that the mistake in the advertisement precluded the existence of a contract. The appellate department of the superior court and the Court of Appeal reversed, relying in part upon Vehicle Code section 11713.1, subdivision (e), which makes it unlawful for an automobile dealer not to sell a motor vehicle at the advertised price while the vehicle remains unsold and before the advertisement expires.

We conclude that a contract satisfying the statute of frauds arose from defendant's advertisement and plaintiff's tender of the advertised price, but that defendant's unilateral mistake of fact provides a basis for rescinding the contract. Although Vehicle Code section 11713.1, subdivision (e), justifies a reasonable expectation on the part of consumers that an automobile dealer intends that such an advertisement constitute an offer, and that the offer can be accepted by paying the advertised price, this statute does not supplant governing common law principles authorizing rescission of a contract on the ground of mistake. As we shall explain, rescission is warranted here because the evidence establishes that defendant's unilateral mistake of fact was made in good faith, defendant did not bear the risk of the mistake, and enforcement of the contract with the erroneous price would be unconscionable. Accordingly, we shall reverse the judgment of the Court of Appeal.

I

While reading the April 26, 1997, edition of the Costa Mesa Daily Pilot, a local newspaper, plaintiff noticed a full-page advertisement placed by defendant. The advertisement promoted a "PRE-OWNED COUP-A-RAMA SALE!/ 2-DAY PRE-OWNED SALES EVENT" and listed, along with 15 other used automobiles, a 1995 Jaguar XJ6 Vanden Plas. The advertisement described the color of this automobile as sapphire blue, included a vehicle identification number, and stated a price of $25,995. The name Lexus of Westminster was displayed prominently in three separate locations in the advertisement, which included defendant's address along with a small map showing the location of the dealership. The following statements appeared in small print at the bottom of the advertisement: "All cars plus tax, lic., doc., smog & bank fees. On approved credit. Ad expires 4/27/97[.]"

Also on April 26, 1997, plaintiff visited a Jaguar dealership that offered other 1995 Jaguars for sale at $8,000 to $10,000 more than the price

specified in defendant's advertisement. The following day, plaintiff and his spouse drove to Lexus of Westminster and observed a blue Jaguar displayed on an elevated ramp. After verifying that the identification number on the sticker was the same as that listed in defendant's April 26 Daily Pilot advertisement, they asked a salesperson whether they could test drive the Jaguar. Plaintiff mentioned that he had seen the advertisement and that the price "looked really good." The salesperson responded that, as a Lexus dealer, defendant might offer better prices for a Jaguar automobile than would a Jaguar dealer. At that point, however, neither plaintiff nor the salesperson mentioned the specific advertised price.

After the test drive, plaintiff and his spouse discussed several negative characteristics of the automobile, including high mileage, an apparent rust problem, and worn tires. In addition, it was not as clean as the other Jaguars they had inspected. Despite these problems, they believed that the advertised price was a very good price and decided to purchase the vehicle. Plaintiff told the salesperson, "Okay. We will take it at your price, $26,000." When the salesperson did not respond, plaintiff showed him the advertisement. The salesperson immediately stated, "That's a mistake."

After plaintiff asked to speak with an individual in charge, defendant's sales manager also told plaintiff that the price listed in the advertisement was a mistake. The sales manager apologized and offered to pay for plaintiff's fuel, time, and effort expended in traveling to the dealership to examine the automobile. Plaintiff declined this offer and expressed his belief that there had been no mistake. Plaintiff stated that he could write a check for the full purchase price as advertised. The sales manager responded that he would not sell the vehicle at the advertised price. Plaintiff then requested the sales price. After performing some calculations, and based upon defendant's $35,000 investment in the automobile, the sales manager stated that he would sell it to plaintiff for $37,016. Plaintiff responded, "No, I want to buy it at your advertised price, and I will write you a check right now." The sales manager again stated that he would not sell the vehicle at the advertised price, and plaintiff and his spouse left the dealership.

Plaintiff subsequently filed this action against defendant for breach of contract, fraud, and negligence. In addition to testimony consistent with the facts set forth above, the following evidence was presented to the municipal court, which acted as the trier of fact.

Defendant's advertising manager compiles information for placement in advertisements in several local newspapers, including the Costa Mesa Daily Pilot. Defendant's advertisement published in the Saturday, April 19, 1997,

edition of the Daily Pilot listed a 1995 Jaguar XJ6 Vanden Plas but did not specify a price for that automobile; instead, the word "Save" appeared in the space where a price ordinarily would have appeared. The following Thursday afternoon, defendant's sales manager instructed the advertising manager to delete the 1995 Jaguar from all advertisements and to substitute a 1994 Jaguar XJ6 with a price of $25,995. The advertising manager conveyed the new information to a representative of the Daily Pilot that same afternoon.

Because of typographical and proofreading errors made by employees of the Daily Pilot, however, the newspaper did not replace the description of the 1995 Jaguar with the description of the 1994 Jaguar, but did replace the word "Save" with the price of $25,995. Thus, the Saturday, April 26, edition of the Daily Pilot erroneously advertised the 1995 Jaguar XJ6 Vanden Plas at a price of $25,995. The Daily Pilot acknowledged its error in a letter of retraction sent to defendant on April 28. No employee of defendant reviewed a proof sheet of the revised Daily Pilot advertisement before it was published, and defendant was unaware of the mistake until plaintiff attempted to purchase the automobile.

Except for the 1995 Jaguar XJ6 Vanden Plas, defendant intended to sell each vehicle appearing in the April 26, 1997, Daily Pilot advertisement at the advertised price. Defendant's advertisements in the April 26 editions of several other newspapers correctly listed the 1994 Jaguar XJ6 with a price of $25,995. In May 1997, defendant's advertisements in several newspapers listed the 1995 Jaguar XJ6 Vanden Plas for sale at $37,995. Defendant subsequently sold the automobile for $38,399.

The municipal court entered judgment for defendant. During the trial, the court ruled that plaintiff had not stated a cause of action for negligence, and it precluded plaintiff from presenting evidence in support of such a claim. After the close of evidence and presentation of argument, the municipal court concluded as a matter of law that a newspaper advertisement for an automobile generally constitutes a valid contractual offer that a customer may accept by tendering payment of the advertised price. The court also determined that such an advertisement satisfies the requirements of the statute of frauds when the dealer's name appears in the advertisement. Nevertheless, the municipal court held that in the present case there was no valid offer because defendant's unilateral mistake of fact vitiated or negated contractual intent. The court made factual findings that defendant's mistake regarding the advertisement was made in good faith and was not intended to deceive the public. The municipal court also found that plaintiff was unaware of the mistake before it was disclosed to him by defendant's representatives.

Plaintiff appealed from the judgment to the appellate department of the superior court (Cal. Rules of Court, rule 121), limiting his contentions to the breach of contract claim. The appellate department reversed the judgment for defendant and directed the municipal court to calculate plaintiff's damages. Relying upon the public policies underlying Vehicle Code section 11713.1, subdivision (e), the appellate department concluded that the advertisement constituted an offer capable of acceptance by tender of the advertised price. Section 11713.1, subdivision (e), provides that it is a violation of the Vehicle Code for a dealer to "[f]ail to sell a vehicle to any person at the advertised total price . . . while the vehicle remains unsold, unless the advertisement states the advertised total price is good only for a specified time and the time has elapsed." The appellate department further concluded that defendant bore the risk of the mistaken transmission of its offer, because plaintiff was unaware of the mistake.

The appellate department of the superior court certified the appeal to the Court of Appeal, which ordered the case transferred to it for hearing and decision. (Cal. Rules of Court, rules 62(a), 63(a).) Like the appellate department, the Court of Appeal reversed the judgment of the municipal court and held that defendant's advertisement constituted a contractual offer that invited acceptance by the act of tendering the advertised price, which plaintiff performed. Acknowledging that the question was close, however, the Court of Appeal reasoned that Vehicle Code section 11713.1, subdivision (e), "tips the scale in favor of . . . construing the advertisement as an offer . . . ." The court disagreed with the municipal court's conclusion that defendant's unilateral mistake of fact, unknown to plaintiff at the time he tendered the purchase price, precluded the existence of a valid offer. With regard to the contention that defendant should not bear the risk of an error resulting solely from the negligence of the newspaper, the Court of Appeal made a factual finding based upon the appellate record (Code Civ. Proc., § 909) that defendant's failure to review a proof sheet for the Daily Pilot advertisement constituted negligence that contributed to the placement of the erroneous advertisement.

We granted defendant's petition for review and requested that the parties include in their briefing a discussion of the effect, if any, of California Uniform Commercial Code division 2, chapter 2, sections 2201-2210, upon the present case.

## II

■ An essential element of any contract is the consent of the parties, or mutual assent. (Civ. Code, §§ 1550, subd. 2, 1565, subd. 2.) Mutual assent

usually is manifested by an offer communicated to the offeree and an acceptance communicated to the offeror. (1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 128, p. 153 (hereafter Witkin).) " ' "An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." ' [Citations.]" (*City of Moorpark v. Moorpark Unified School Dist.* (1991) 54 Cal.3d 921, 930 [1 Cal.Rptr.2d 896, 819 P.2d 854] (*Moorpark*).) The determination of whether a particular communication constitutes an operative offer, rather than an inoperative step in the preliminary negotiation of a contract, depends upon all the surrounding circumstances. (1 Corbin, Contracts (rev. ed. 1993) § 2.2, p. 105.) The objective manifestation of the party's assent ordinarily controls, and the pertinent inquiry is whether the individual to whom the communication was made had reason to believe that it was intended as an offer. (1 Witkin, *supra*, Contracts, § 119, p. 144; 1 Farnsworth, Contracts (2d ed. 1998) § 3.10, p. 237.)

In the present case, the municipal court ruled that newspaper advertisements for automobiles generally constitute offers that can be accepted by a customer's tender of the purchase price. Its conclusion that defendant's advertisement for the 1995 Jaguar did not constitute an offer was based solely upon the court's factual determination that the erroneous price in the advertisement was the result of a good faith mistake.

Because the existence of an offer depends upon an objective interpretation of defendant's assent as reflected in the advertisement, however, the mistaken price (not reasonably known to plaintiff to be a mistake) is irrelevant in determining the threshold question whether the advertisement constituted an offer. In this situation, mistake instead properly would be considered in deciding whether a contract resulted from the acceptance of an offer containing mistaken terms, or whether any such contract could be voided or rescinded. (See *Chakmak v. H. J. Lucas Masonry, Inc.* (1976) 55 Cal.App.3d 124, 129 [127 Cal.Rptr. 404]; Rest.2d Contracts, § 153; 1 Corbin, Contracts, *supra*, § 4.11, pp. 623-627; 2 Williston, Contracts (4th ed. 1991) § 6:57, pp. 682-695.) Thus, the municipal court did not make any factual findings relevant to the issue whether defendant's advertisement constituted an offer, and we shall review the question de novo. (*Richards v. Flower* (1961) 193 Cal.App.2d 233, 235 [14 Cal.Rptr. 228].)

Some courts have stated that an advertisement or other notice disseminated to the public at large generally does not constitute an offer, but rather is presumed to be an invitation to consider, examine, and negotiate. (E.g., *Harris v. Time, Inc.* (1987) 191 Cal.App.3d 449, 455 [237 Cal.Rptr. 584]; see Rest.2d Contracts, § 26, com. b, p. 76; 1 Corbin, Contracts, *supra*, § 2.4,

p. 116; 1 Farnsworth, Contracts, *supra*, § 3.10, p. 242; 1 Williston, Contracts (4th ed. 1990) § 4:7, pp. 285-287, 294.) Nevertheless, certain advertisements have been held to constitute offers where they invite the performance of a specific act without further communication and leave nothing for negotiation. Advertisements for rewards typically fall within this category, because performing the requested act (e.g., returning a lost article or supplying particular information) generally is all that is necessary to accept the offer and conclude the bargain. (1 Witkin, *supra*, Contracts, § 188, p. 200; Rest.2d Contracts, § 29, com. b, illus. 1, p. 84; 1 Corbin, Contracts, *supra*, § 2.4, p. 119.)

Various advertisements involving transactions in goods also have been held to constitute offers where they invite particular action. For example, a merchant's advertisement that listed particular goods at a specific price and included the phrase "First Come First Served" was deemed to be an offer, because it constituted a promise to sell to a customer at that price in exchange for the customer's act of arriving at the store at a particular time. (*Lefkowitz v. Great Minneapolis Surplus Store* (1957) 251 Minn. 188 [86 N.W. 2d 689, 691]; Rest.2d Contracts, § 26, com. b, illus. 1, p. 76.) Similarly, external wording on the envelope of an item of bulk rate mail promising to give the recipient a watch "just for opening the envelope" before a certain date was held to constitute an operative offer accepted by performance of the act of opening the envelope. (*Harris v. Time, Inc.*, *supra*, 191 Cal.App.3d 449, 455-456.) In addition, an advertisement stating that anyone who purchased a 1954 automobile from a dealer could exchange it for a 1955 model at no additional cost constituted an offer that was accepted when the plaintiff purchased the 1954 vehicle. (*Johnson v. Capital City Ford Co.* (La.Ct.App. 1955) 85 So.2d 75, 79-80; see also *Cobaugh v. Klick-Lewis* (1989) 385 Pa.Super. 587 [561 A.2d 1248, 1249-1250] [sign at golf course stated "hole-in-one wins" an automobile at a specified price].) In such cases, courts have considered whether the advertiser, in clear and positive terms, promised to render performance in exchange for something requested by the advertiser, and whether the recipient of the advertisement reasonably might have concluded that by acting in accordance with the request a contract would be formed. (1 Williston, Contracts, *supra*, § 4:7, pp. 296-297; 1 Corbin, Contracts, *supra*, § 2.4, pp. 116-117; see, e.g., *Chang v. First Colonial Sav. Bank* (1991) 242 Va. 388 [410 S.E.2d 928, 929-930] [bank's newspaper advertisement stating "Deposit $14,000 and receive . . . $20,136.12 upon maturity in 3 1/2 years" constituted an offer that was accepted by the plaintiffs' deposit of that sum for the specified period].)

Relying upon these decisions, defendant contends that its advertisement for the 1995 Jaguar XJ6 Vanden Plas did not constitute an offer, because the

advertisement did not request the performance of a specific act that would conclude the bargain. According to defendant, plaintiff's assertion that the advertisement was an offer conflicts with the generally accepted "black-letter" rule that an advertisement that simply identifies goods and specifies a price is an invitation to negotiate.

This court has not previously applied the common law rules upon which defendant relies, including the rule that advertisements generally constitute invitations to negotiate rather than offers. Plaintiff observes that such rules governing the construction of advertisements have been criticized on the ground that they are inconsistent with the reasonable expectations of consumers and lead to haphazard results. (See Eisenberg, *Expression Rules in Contract Law and Problems of Offer and Acceptance* (1994) 82 Cal. L.Rev. 1127, 1166-1172.) Plaintiff urges this court to reject the black-letter advertising rule.

In the present case, however, we need not consider the viability of the black-letter rule regarding the interpretation of advertisements *in general.* ▋ Like the Court of Appeal, we conclude that a licensed automobile dealer's advertisement for the sale of a particular vehicle at a specific price—when construed in light of Vehicle Code section 11713.1, subdivision (e)—reasonably justifies a consumer's understanding that the dealer intends the advertisement to constitute an offer and that the consumer's assent to the bargain is invited and will conclude it.

Vehicle Code section 11713.1 sets forth comprehensive requirements governing a licensed automobile dealer's advertisements for motor vehicles. This statute requires, among other things, that an advertisement for a specific automobile identify the vehicle by its identification number or license number (*id.*, subd. (a)), disclose the type of charges that will be added to the advertised price at the time of sale (*id.*, subd. (b)), and refrain from containing various types of misleading information (*id.*, subds. (i), (*l*), (o), (p), (r)).

In addition, Vehicle Code section 11713.1, subdivision (e) (hereafter section 11713.1(e)), states that it is a violation of the Vehicle Code for the holder of any dealer's license to "[f]ail to sell a vehicle to any person at the advertised total price, exclusive of [specified charges such as taxes and registration fees], while the vehicle remains unsold, unless the advertisement states the advertised total price is good only for a specified time and the time has elapsed."[1]

---

[1]Vehicle Code section 11713.1 states in pertinent part: "It is a violation of this code for the holder of any dealer's license issued under this article to do any of the following: [¶] . . . [¶]

The administrative regulation implementing section 11713.1(e) states in relevant part: "A specific vehicle advertised by a dealer . . . shall be willingly shown and sold at the advertised price and terms while such vehicle remains unsold . . . , unless the advertisement states that the advertised price and terms are good only for a specific time and such time has elapsed. Advertised vehicles must be sold at or below the advertised price irrespective of whether or not the advertised price has been communicated to the purchaser." (Cal. Code Regs., tit. 13, § 260.04, subd. (b).)[2]

Plaintiff asserts that because a dealer is prohibited by section 11713.1(e) from failing to sell a particular vehicle at the advertised price, an advertisement for such a vehicle cannot be a mere request for offers from consumers or an invitation to negotiate, but instead must be deemed an operative offer that is accepted when a consumer tenders the full advertised price. We agree that, in light of the foregoing regulatory scheme, a licensed automobile dealer's advertisement for a particular vehicle at a specific price constitutes an offer.

As one commentator has observed, legislation can affect consumer expectations and cause reasonable individuals to regard certain retail advertisements for the sale of goods as offers to complete a bargain. (1 Corbin, Contracts, *supra*, § 2.4, p. 118.) By authorizing disciplinary action against a licensed automobile dealer that fails to sell a vehicle at the advertised price, section 11713.1(e) creates a reasonable expectation on the part of consumers that the dealer intends to make an offer to sell at that price, and that the consumer can accept the offer by paying the price specified in the advertisement. Interpreted in light of the regulatory obligations imposed upon dealers, an advertisement for a particular automobile at a specific price constitutes an objective manifestation of the dealer's willingness to enter into a bargain on the stated terms, and justifies the consumer's understanding that his or her assent to the bargain is invited and will conclude it. Such an advertisement

(e) Fail to sell a vehicle to any person at the advertised total price, exclusive of taxes, vehicle registration fees, the fee charged by the state for the issuance of any certificate of compliance or noncompliance pursuant to any statute, finance charges, mobilehome escrow fees, the amount of any city, county, or city and county imposed fee or tax for a mobilehome, and any dealer document preparation charge, which charges shall not exceed forty-five dollars ($45) for the document preparation charge and not to exceed fifty dollars ($50) for emission testing plus the actual fees charged for certificates pursuant to Section 44060 of the Health and Safety Code, while the vehicle remains unsold, unless the advertisement states the advertised total price is good only for a specified time and the time has elapsed."

[2] A dealer's violation of section 11713.1(e) constitutes a ground for suspension or revocation of the dealer's license by the Department of Motor Vehicles and is a misdemeanor. (Veh. Code, §§ 11705, subd. (a)(10), 40000.11, subd. (a).)

therefore constitutes an offer that is accepted when a consumer tenders the advertised price.[3]

Defendant and its supporting amici curiae contend that section 11713.1(e) was not intended to modify the common law of contracts, and that therefore the statute should not be considered in determining whether a contract arose from defendant's advertisement and plaintiff's tender of the advertised price. As we shall explain (pt. IV, *post*), we agree that section 11713.1(e) does not reflect a legislative intent to supplant the common law governing contracts for the sale of motor vehicles by licensed dealers. Nevertheless, the statute does govern the conduct of dealers and thus creates an objective expectation that dealers intend to sell vehicles at the advertised price. Therefore, even though section 11713.1(e) does not alter the applicable common law regarding contractual offers, consumer expectations arising from the statute are relevant in determining whether defendant's advertisement constituted an offer pursuant to governing principles of contract law.

Amicus curiae California Motor Car Dealers Association further asserts that an advertisement for the sale of a vehicle does not constitute an offer because consumers have reason to believe that an automobile dealer does not intend to conclude the bargain until agreement is reached with regard to numerous terms other than price and until the contract is reduced to writing. (See Rest.2d Contracts, §§ 26, 27; 1 Witkin, *supra*, Contracts, § 142, pp. 166-167.) For example, a written contract for the sale of an automobile by a dealer typically includes terms such as the form of payment, warranties, insurance, title, registration, delivery, taxes, documentation fees, and, if applicable, financing. (See *Twaite v. Allstate Ins. Co.* (1989) 216 Cal.App.3d 239, 243 [264 Cal.Rptr. 598]; *O'Keefe v. Lee Calan Imports, Inc.* (1970) 128 Ill.App.2d 410 [262 N.E.2d 758, 760, 43 A.L.R.3d 1097]; see also Civ. Code, § 2981 et seq. [requirements for conditional contracts for the sale of motor vehicles].) In addition, specific written disclosures, required by statute, must appear in the contract. (E.g., Veh. Code, § 11713.1, subds. (v) [retail automobile sales contract clearly and conspicuously must disclose whether the vehicle is being sold as used or new], (x) [dealer must disclose on the face of the contract whether the transaction is or is not subject to a fee received by an "autobroker" as defined in the Vehicle Code].)

Plaintiff, on the other hand, contends that the existence of a contract is not defeated by the circumstance that he and defendant might have included

---

[3]Of course, the consumer's tender of payment must be in a form that is commercially acceptable (see Cal. U. Com. Code, § 2511), and other legal requirements necessary to complete the transaction must be satisfied, such as execution of a formal written agreement containing the required statutory disclosures, and proper delivery of the certificate of ownership and registration (see Veh. Code, § 5600).

additional terms in their ultimate written agreement, or that acceptance of defendant's offer might have been communicated by means other than tender of the purchase price, for example by signing a written contract. Plaintiff relies upon the following principle: "Manifestations of assent that are in themselves sufficient to conclude a contract will not be prevented from so operating by the fact that the parties also manifest an intention to prepare and adopt a written memorial thereof; but the circumstances may show that the agreements are preliminary negotiations." (Rest.2d Contracts, § 27.) Plaintiff also observes that "[a]n offer to make a contract shall be construed as inviting acceptance in any manner and by any medium reasonable in the circumstances," unless otherwise indicated. (Cal. U. Com. Code, § 2206, subd. (1)(a).)[4]

Although dealers are required by statute to prepare a written contract when selling an automobile, and such a contract contains terms other than the price of the vehicle, we agree with plaintiff that a dealer's advertisement specifying a price for a particular vehicle constitutes a sufficient manifestation of the dealer's assent to give rise to a contract. As we have explained, in light of section 11713.1(e) such an advertisement objectively reflects the dealer's intention to sell the vehicle to a member of the public who tenders the full advertised price while the vehicle remains unsold and before the advertisement expires. The price almost always is the most important term of the bargain, and the dealer's intention to include other terms in a written contract does not preclude the existence of mutual assent sufficient to conclude a contract.

In sum, because section 11713.1(e) makes it unlawful for a dealer not to sell a particular vehicle at the advertised price while the vehicle remains unsold and before the advertisement expires, plaintiff reasonably could believe that defendant intended the advertisement to be an offer. Therefore, we conclude that defendant's advertisement constituted an offer that was accepted by plaintiff's tender of the advertised price.

### III

Defendant contends that even if its advertisement constituted an offer that was accepted by plaintiff's tender of the purchase price, plaintiff is not authorized by law to enforce the resulting contract, because there was no signed writing that satisfied the requirements of the statute of frauds for the sale of goods. Plaintiff, on the other hand, maintains that defendant's name,

---

[4]The parties agree that division 2 of the California Uniform Commercial Code applies to the sale of motor vehicles. (Cal. U. Com. Code, §§ 2102, 2105, subd. (1); *English v. Ralph Williams Ford* (1971) 17 Cal.App.3d 1038, 1046 [95 Cal.Rptr. 501].)

as it appeared in the newspaper advertisement for the sale of the vehicle, constituted a signature within the meaning of the statute.

The applicable statute of frauds states in relevant part: "Except as otherwise provided in this section a contract for the sale of goods for the price of five hundred dollars ($500) or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and *signed by the party against whom enforcement is sought or by his or her authorized agent or broker*. A writing is not insufficient because it omits or incorrectly states a term agreed upon[,] but the contract is not enforceable under this paragraph beyond the quantity of goods shown in the writing." (Cal. U. Com. Code, § 2201, subd. (1), italics added.)

The California Uniform Commercial Code defines the term "signed" as including "any symbol executed or adopted by a party with present intention to authenticate a writing." (Cal. U. Com. Code, § 1201, subd. (38).) The comment regarding the corresponding provision of the Uniform Commercial Code states: "The inclusion of authentication in the definition of 'signed' is to make clear that as the term is used in [the code] a complete signature is not necessary. Authentication may be printed, stamped, or written; it may be by initials or by thumbprint. It may be on any part of the document and in appropriate cases may be found in a billhead or letterhead. No catalog of possible authentications can be complete and the court must use common sense and commercial experience in passing upon these matters. The question always is whether the symbol was executed or adopted by the party with present intention to authenticate the writing." (U. Com. Code com., reprinted at 23A West's Ann. Cal. U. Com. Code (1964 ed.) foll. § 1201, p. 65; see 1 Witkin, *supra*, Contracts, § 281, p. 273 [citing California decisions generally consistent with this comment]; Rest.2d Contracts, § 134.)

Some decisions have relaxed the signature requirement considerably to accommodate various forms of electronic communication. For example, a party's printed or typewritten name in a telegram has been held to satisfy the statute of frauds. (E.g., *Hessenthaler v. Farzin* (1989) 388 Pa.Super. 37 [564 A.2d 990, 993-994]; *Hillstrom v. Gosnay* (1980) 188 Mont. 388 [614 P.2d 466, 470].) Even a tape recording identifying the parties has been determined to meet the signature requirement of the Uniform Commercial Code. (*Ellis Canning Company v. Bernstein* (D.Colo. 1972) 348 F.Supp. 1212, 1228.)

When an advertisement constitutes an offer, the printed name of the merchant is intended to authenticate the advertisement as that of the merchant. (See Rest.2d Contracts, § 131, com. d, illus. 2, p. 335 [newspaper

advertisement constituting an offer to purchase certain goods, with offeror's name printed therein, satisfies the requirements of the statute of frauds].) In other words, where the advertisement reasonably justifies the recipient's understanding that the communication was intended as an offer, the offeror's intent to authenticate his or her name as a signature can be established from the face of the advertisement.

In the present case, the parties presented no evidence with regard to whether defendant intended that its name in the advertisement constitute a signature. Therefore, the issue whether the appearance of defendant's name supports a determination that the writing was "signed" is closely related to the question whether the advertisement constituted an offer. Those characteristics of the advertisement justifying plaintiff's belief that defendant intended it to be an offer also support a finding that defendant intended that its name serve as an authentication.

As established above, defendant's advertisement reflected an objective manifestation of its intention to make an offer for the sale of the vehicle at the stated price. Defendant's printed name in the advertisement similarly evidenced an intention to authenticate the advertisement as an offer and therefore constituted a signature satisfying the statute of frauds.

## IV

Having concluded that defendant's advertisement for the sale of the Jaguar automobile constituted an offer that was accepted by plaintiff's tender of the advertised price, and that the resulting contract satisfied the statute of frauds, we next consider whether defendant can avoid enforcement of the contract on the ground of mistake.

A party may rescind a contract if his or her consent was given by mistake. (Civ. Code, § 1689, subd. (b)(1).) A factual mistake by one party to a contract, or unilateral mistake, affords a ground for rescission in some circumstances. ▇▇▇ ▀▀ Civil Code section 1577 states in relevant part: "Mistake of fact is a mistake, not caused by the neglect of a legal duty on the part of the person making the mistake, and consisting in: [¶] 1. An unconscious ignorance or forgetfulness of a fact past or present, material to the contract . . . ."[5]

▇ The Court of Appeal determined that defendant's error did not constitute a mistake of fact within the meaning of Civil Code section 1577.

[5]Plaintiff asserts that this court should not consider rescission as a remedy for defendant's unilateral mistake, because defendant did not seek rescission. We must affirm the trial court's judgment for defendant if it is correct on any ground, however. (9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 340, p. 382.) Accordingly, we shall consider whether rescission on the

In support of this determination, the court relied upon the following principle: "[A] unilateral misinterpretation of contractual terms, without knowledge by the other party at the time of contract, does not constitute a mistake under either Civil Code section 1577 [mistake of fact] or 1578 [mistake of law]." (*Hedging Concepts, Inc. v. First Alliance Mortgage Co.* (1996) 41 Cal.App.4th 1410, 1422 [49 Cal.Rptr.2d 191] (*Hedging Concepts*).)

The foregoing principle has no application to the present case. In *Hedging Concepts*, the plaintiff believed that he would fulfill his contractual obligations by introducing potential business prospects to the defendant. The contract, however, required the plaintiff to procure a completed business arrangement. The Court of Appeal held that the plaintiff's subjective misinterpretation of the terms of the contract constituted, at most, a mistake of law. Because the defendant was unaware of the plaintiff's misunderstanding at the time of the contract, the court held that rescission was not a proper remedy. (*Hedging Concepts, supra*, 41 Cal.App.4th at pp. 1418-1422, citing 1 Witkin, *supra*, Contracts, § 379, pp. 345-346 [relief for unilateral mistake of law is authorized only where one party knows of, does not correct, and takes advantage or enjoys the benefit of another party's mistake].) Defendant's mistake in the present case, in contrast, did not consist of a subjective misinterpretation of a contract term, but rather resulted from an unconscious ignorance that the Daily Pilot advertisement set forth an incorrect price for the automobile. Defendant's lack of knowledge regarding the typographical error in the advertised price of the vehicle cannot be considered a mistake of law. Defendant's error constituted a mistake of fact, and the Court of Appeal erred in concluding otherwise. As we shall explain, the Court of Appeal also erred to the extent it suggested that a unilateral mistake of fact affords a ground for rescission only where the other party is aware of the mistake.

ground of mistake constitutes a defense to plaintiff's breach of contract claim. (See Civ. Code, § 1692.)

Contrary to the position expressed by plaintiff at oral argument, the parties have briefed extensively the issue of mistake as a defense to the breach of contract action. In their brief supporting defendant, amici curiae The Times Mirror Company and the California Newspaper Publishers Association discuss the prerequisites for rescission on the ground of unilateral mistake of fact. In response, plaintiff has sought to distinguish case authority governing rescission on this ground and contends that "rescission is not warranted by the facts or law." In addition, at trial the parties presented evidence regarding all questions that this court's prior decisions have considered when authorizing rescission based upon a party's unilateral mistake of fact, as we shall discuss. Finally, defendant gave sufficient notice of its intent to rescind the contract when defendant informed plaintiff of the mistake in the advertisement, refused to perform, and offered to compensate plaintiff for his time and expenses. " ' " 'It is not necessary that the notice to rescind shall be formal and explicit; it is sufficient that notice shall be given to the other party which clearly shows the intention of the person rescinding to consider the contract at an end.' " ' [Citations.]" (*Wilson v. Lewis* (1980) 106 Cal.App.3d 802, 809 [165 Cal.Rptr. 396] [oral repudiation of contract constituted adequate notice of rescission].)

Under the first Restatement of Contracts, unilateral mistake did not render a contract voidable unless the other party knew of or caused the mistake. (1 Witkin, *supra*, Contracts, § 370, p. 337; see Rest., Contracts, § 503.) In *Germain etc. Co. v. Western Union etc. Co.* (1902) 137 Cal. 598, 602 [70 P. 658], this court endorsed a rule similar to that of the first Restatement. Our opinion indicated that a seller's price quotation erroneously transcribed and delivered by a telegraph company contractually could bind the seller to the incorrect price, unless the buyer knew or had reason to suspect that a mistake had been made. Some decisions of the Court of Appeal have adhered to the approach of the original Restatement. (See, e.g., *Conservatorship of O'Connor* (1996) 48 Cal.App.4th 1076, 1097-1098 [56 Cal.Rptr.2d 386], and cases cited therein.) Plaintiff also advocates this approach and contends that rescission is unavailable to defendant, because plaintiff was unaware of the mistaken price in defendant's advertisement when he accepted the offer.

The Court of Appeal decisions reciting the traditional rule do not recognize that in *M. F. Kemper Const. Co. v. City of L. A.* (1951) 37 Cal.2d 696, 701 [235 P.2d 7] (*Kemper*), we acknowledged but rejected a strict application of the foregoing Restatement rule regarding unilateral mistake of fact. The plaintiff in *Kemper* inadvertently omitted a $301,769 item from its bid for the defendant city's public works project—approximately one-third of the total contract price. After discovering the mistake several hours later, the plaintiff immediately notified the city and subsequently withdrew its bid. Nevertheless, the city accepted the erroneous bid, contending that rescission of the offer was unavailable for the plaintiff's unilateral mistake.

Our decision in *Kemper* recognized that the bid, when opened and announced, resulted in an irrevocable option contract conferring upon the city a right to accept the bid, and that the plaintiff could not withdraw its bid unless the requirements for rescission of this option contract were satisfied. (*Kemper, supra*, 37 Cal.2d at pp. 700, 704.) We stated: "Rescission may be had for mistake of fact if the mistake is material to the contract and was not the result of neglect of a legal duty, if enforcement of the contract as made would be unconscionable, and if the other party can be placed in statu quo. [Citations.]" (*Id.* at p. 701.) Although the city knew of the plaintiff's mistake before it accepted the bid, and this circumstance was relevant to our determination that requiring the plaintiff to perform at the mistaken bid price would be unconscionable (*id.* at pp. 702-703), we authorized rescission of the city's option contract even though the city had not known of or contributed to the mistake before it opened the bid.

Similarly, in *Elsinore Union etc. Sch. Dist. v. Kastorff* (1960) 54 Cal.2d 380 [6 Cal.Rptr. 1, 353 P.2d 713] (*Elsinore*), we authorized the rescission of

an erroneous bid even where the contractor had assured the public agency, after the agency inquired, that his figures were accurate, and where the agency already had accepted the bid before it was aware of the mistake. In this situation, the other party clearly had no reason to know of the contractor's mistake before it accepted the bid.

The decisions in *Kemper* and *Elsinore* establish that California law does not adhere to the original Restatement's requirements for rescission based upon unilateral mistake of fact—i.e., only in circumstances where the other party knew of the mistake or caused the mistake. Consistent with the decisions in *Kemper* and *Elsinore*, the Restatement Second of Contracts authorizes rescission for a unilateral mistake of fact where "the effect of the mistake is such that enforcement of the contract would be unconscionable." (Rest.2d Contracts, § 153, subd. (a).)[6] The comment following this section recognizes "a growing willingness to allow avoidance where the consequences of the mistake are so grave that enforcement of the contract would be unconscionable." (*Id.*, com. a, p. 394.) Indeed, two of the illustrations recognizing this additional ground for rescission in the Restatement Second of Contracts are based in part upon this court's decisions in *Kemper* and *Elsinore*. (Rest.2d Contracts, § 153, com. c, illus. 1, 3, pp. 395, 396, and Reporter's Note, pp. 400-401; see also *Schultz v. County of Contra Costa* (1984) 157 Cal.App.3d 242, 249-250 [203 Cal.Rptr. 760] [applying section 153, subdivision (a), of the Restatement Second of Contracts], disagreed with on another ground in *Van Petten v. County of San Diego* (1995) 38 Cal.App.4th 43, 50-51 [44 Cal.Rptr.2d 816]; 1 Witkin, *supra*, Contracts, § 370, p. 337 [reciting the rule of the same Restatement provision].) Although the most common types of mistakes falling within this category occur in bids on construction contracts, section 153 of the Restatement Second of Contracts is not limited to such cases. (Rest.2d Contracts, § 153, com. b, p. 395.)

Because the rule in section 153, subdivision (a), of the Restatement Second of Contracts, authorizing rescission for unilateral mistake of fact where enforcement would be unconscionable, is consistent with our previous decisions, we adopt the rule as California law. As the author of one treatise recognized more than 40 years ago, the decisions that are inconsistent with the traditional rule "are too numerous and too appealing to the sense of

---

[6]Section 153 of the Restatement Second of Contracts states: "Where a mistake of one party at the time a contract was made as to a basic assumption on which he made the contract has a material effect on the agreed exchange of performances that is adverse to him, the contract is voidable by him if he does not bear the risk of the mistake under the rule stated in § 154, and [¶] (a) the effect of the mistake is such that enforcement of the contract would be unconscionable, or [¶] (b) the other party had reason to know of the mistake or his fault caused the mistake."

justice to be disregarded." (3 Corbin, Contracts (1960) § 608, p. 675, fn. omitted.) We reject plaintiff's contention and the Court of Appeal's conclusion that, because plaintiff was unaware of defendant's unilateral mistake, the mistake does not provide a ground to avoid enforcement of the contract.

Having concluded that a contract properly may be rescinded on the ground of unilateral mistake of fact as set forth in section 153, subdivision (a), of the Restatement Second of Contracts, we next consider whether the requirements of that provision, construed in light of our previous decisions, are satisfied in the present case. ██ Where the plaintiff has no reason to know of and does not cause the defendant's unilateral mistake of fact, the defendant must establish the following facts to obtain rescission of the contract: (1) the defendant made a mistake regarding a basic assumption upon which the defendant made the contract; (2) the mistake has a material effect upon the agreed exchange of performances that is adverse to the defendant; (3) the defendant does not bear the risk of the mistake; and (4) the effect of the mistake is such that enforcement of the contract would be unconscionable. We shall consider each of these requirements below.

██ A significant error in the price term of a contract constitutes a mistake regarding a basic assumption upon which the contract is made, and such a mistake ordinarily has a material effect adverse to the mistaken party. (See, e.g., *Elsinore, supra,* 54 Cal.2d at p. 389 [7 percent error in contract price]; *Lemoge Electric v. County of San Mateo* (1956) 46 Cal.2d 659, 661-662 [297 P.2d 638] [6 percent error]; *Kemper, supra,* 37 Cal.2d at p. 702 [28 percent error]; *Brunzell Const. Co. v. G. J. Weisbrod, Inc.* (1955) 134 Cal.App.2d 278, 286 [285 P.2d 989] [20 percent error]; Rest.2d Contracts, § 152, com. b, illus. 3, p. 387 [27 percent error].) In establishing a material mistake regarding a basic assumption of the contract, the defendant must show that the resulting imbalance in the agreed exchange is so severe that it would be unfair to require the defendant to perform. (Rest.2d Contracts, § 152, com. c, p. 388.) Ordinarily, a defendant can satisfy this requirement by showing that the exchange not only is less desirable for the defendant, but also is more advantageous to the other party. (*Ibid.*)

Measured against this standard, defendant's mistake in the contract for the sale of the Jaguar automobile constitutes a material mistake regarding a basic assumption upon which it made the contract. Enforcing the contract with the mistaken price of $25,995 would require defendant to sell the vehicle to plaintiff for $12,000 less than the intended advertised price of $37,995—an error amounting to 32 percent of the price defendant intended. The exchange of performances would be substantially less desirable for defendant and more desirable for plaintiff. Plaintiff implicitly concedes that defendant's mistake was material.

The parties and amici curiae vigorously dispute, however, whether defendant should bear the risk of its mistake. Section 154 of the Restatement Second of Contracts states: "A party bears the risk of a mistake when [¶] (a) the risk is allocated to him by agreement of the parties, or [¶] (b) he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient, or [¶] (c) the risk is allocated to him by the court on the ground that it is reasonable in the circumstances to do so." Neither of the first two factors applies here. Thus, we must determine whether it is reasonable under the circumstances to allocate to defendant the risk of the mistake in the advertisement.

Civil Code section 1577, as well as our prior decisions, instructs that the risk of a mistake must be allocated to a party where the mistake results from that party's neglect of a legal duty. (*Kemper*, *supra*, 37 Cal.2d at p. 701.)[7] It is well established, however, that ordinary negligence does not constitute neglect of a legal duty within the meaning of Civil Code section 1577. (*Kemper*, *supra*, 37 Cal.2d at p. 702.) For example, we have described a careless but significant mistake in the computation of the contract price as the type of error that sometimes will occur in the conduct of reasonable and cautious businesspersons, and such an error does not necessarily amount to neglect of legal duty that would bar equitable relief. (*Ibid.*; see also *Sun 'n Sand, Inc. v. United California Bank* (1978) 21 Cal.3d 671, 700-701 [148 Cal.Rptr. 329, 582 P.2d 920] (plur. opn. of Mosk, J.); *Elsinore*, *supra*, 54 Cal.2d at pp. 388-389.)

A concept similar to neglect of a legal duty is described in section 157 of the Restatement Second of Contracts, which addresses situations in which a party's fault precludes relief for mistake. Only where the mistake results from "a failure to act in good faith and in accordance with reasonable standards of fair dealing" is rescission unavailable. (Rest.2d Contracts, § 157.) This section, consistent with the California decisions cited in the preceding paragraph, provides that a mistaken party's failure to exercise due care does not necessarily bar rescission under the rule set forth in section 153.

"The mere fact that a mistaken party could have avoided the mistake by the exercise of reasonable care does not preclude . . . avoidance . . . [on the ground of mistake]. Indeed, since a party can often avoid a mistake by the exercise of such care, the availability of relief would be severely

---

[7]Civil Code section 1577 does not include language regarding allocation of the risk of mistake to one party, but rather excludes from the definition of "mistake of fact" any mistake resulting from the neglect of a legal duty.

circumscribed if he were to be barred by his negligence. Nevertheless, in *extreme cases* the mistaken party's fault is a proper ground for denying him relief for a mistake that he otherwise could have avoided. . . . [T]he rule is stated in terms of good faith and fair dealing. . . . [A] failure to act in good faith and in accordance with reasonable standards of fair dealing during pre-contractual negotiations does not amount to a breach. Nevertheless, under the rule stated in this Section, the failure bars a mistaken party from relief based on a mistake that otherwise would not have been made. During the negotiation stage each party is held to a degree of responsibility appropriate to the justifiable expectations of the other. The terms 'good faith' and 'fair dealing' are used, in this context, in much the same sense as in . . . Uniform Commercial Code § 1-203." (Rest.2d Contracts, § 157, com. a, pp. 416-417, italics added.) Section 1201, subdivision (19), of the California Uniform Commercial Code defines "good faith," as used in section 1203 of that code, as "honesty in fact in the conduct or transaction concerned."

Because of its erroneous conclusion that defendant's error was not a mistake of fact, the Court of Appeal did not reach the question whether the mistake resulted from defendant's neglect of a legal duty. The Court of Appeal did make an independent finding of fact on appeal that, in light of the statutory duties imposed upon automobile dealers, defendant's failure to review the proof sheet for the advertisement constituted *negligence*. This finding, however, was relevant only to the Court of Appeal's determination that defendant's concurrent negligence rendered it unnecessary for the court to consider the application of *Germain etc. Co. v. Western Union etc. Co.*, *supra*, 137 Cal. 598, to the present case, because *Germain* involved a mistaken offer resulting solely from the negligence of an intermediary. In any event, as established above, ordinary negligence does not constitute the neglect of a legal duty within the meaning of Civil Code section 1577 and the governing decisions. (See also 3 Corbin, Contracts, *supra*, § 606, pp. 649-656 [negligence is no bar to relief from unilateral mistake if other party can be placed in status quo].) Accordingly, we shall consider in the first instance whether defendant's mistake resulted from its neglect of a legal duty, barring the remedy of rescission.

Plaintiff contends that section 11713.1(e) imposes a legal duty upon licensed automobile dealers to ensure that their advertisements containing sale prices are accurate. As established above, section 11713.1(e) provides that it is a violation of the Vehicle Code for a dealer to "[f]ail to sell a vehicle to any person at the advertised total price . . . while the vehicle remains unsold, unless the advertisement states the advertised total price is good only for a specified time and the time has elapsed." Plaintiff also relies upon Vehicle Code section 11713, subdivision (a), which provides that a

licensed dealer shall not "[m]ake or disseminate . . . in any newspaper . . . any statement which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . . ." According to plaintiff, defendant's alleged violation of the duties arising from these statutes also constitutes the neglect of a legal duty within the meaning of Civil Code section 1577.

Even if we were to conclude that the foregoing statutes impose a duty of care upon automobile dealers to ensure that prices in an advertisement are accurate, a violation of such a duty would not necessarily preclude the availability of equitable relief. Our prior decisions instruct that the circumstance that a statute imposes a duty of care does not establish that the violation of such a duty constitutes "the neglect of a legal duty" (Civ. Code, § 1577) that would preclude rescission for a unilateral mistake of fact.

In *Sun 'n Sand, Inc. v. United California Bank, supra*, 21 Cal.3d 671, for example, a bank contended that a customer's violation of its statutory duty to examine bank statements and returned checks for alterations or forgeries (Cal. U. Com. Code, § 4406) constituted the neglect of a legal duty within the meaning of Civil Code section 1577, thus barring relief for the customer's mistake of fact. We rejected the bank's defense: "It does not follow . . . that breach of this duty by failure to exercise reasonable care in discharging it constitutes the 'neglect of a legal duty' such that a cause of action for mistake of fact must be barred. . . . We have . . . recognized on a number of occasions that 'ordinary negligence does not constitute the neglect of a legal duty as that term is used in section 1577 of the Civil Code.' [Citations.] The rule developed in these cases reflects a determination that the 'neglect of a legal duty' qualification derives content from equitable considerations and principles, and that it would be inequitable to bar relief for mistake because of the breach of a duty of care when the [other] party . . . suffers no loss. That [the plaintiff] may have failed to exercise care in examining its bank statements is thus not a sufficient basis for denying it equitable relief for mistake." (*Sun 'n Sand, Inc. v. United California Bank, supra*, 21 Cal.3d at pp. 700-701 (plur. opn. of Mosk, J.); see *id.* at p. 709 (conc. & dis. opn. of Sullivan, J.) [agreeing with conclusion of plur. opn. on this claim].)

Plaintiff also seeks to preclude relief for defendant's mistake on the ground that defendant's alleged violation of Vehicle Code section 11713.1(e) constitutes negligence per se pursuant to Evidence Code section 669, which provides that an individual's violation of a statute can lead to a presumption that he or she failed to exercise due care. As we have seen, however, a failure to exercise due care, by itself, does not constitute the neglect of a legal duty. Without evidence of bad faith on the part of

defendant, its alleged violation of any duty of care arising from section 11713.1(e) constitutes, at most, ordinary negligence. Accordingly, a negligent violation of any duty imposed by section 11713.1(e) does not constitute the neglect of a legal duty or a sufficient basis for denying defendant equitable relief for its good faith mistake.

In a related claim, plaintiff contends that section 11713.1(e) imposes upon automobile dealers an absolute obligation to sell a vehicle at the advertised price—notwithstanding any mistake regarding the price, or the circumstances under which the mistake was made—and that this statute therefore supplants the common law regarding rescission of contracts and eliminates the defense of mistake. Allowing automobile dealers to avoid contracts because of carelessness in proofreading advertisements, plaintiff asserts, would undermine the legislative intent and public policy favoring the protection of consumers and ensuring accuracy in advertisements.

Plaintiff's contention regarding the effect of section 11713.1(e) upon the common law is inconsistent with our prior decisions. In *Moorpark, supra,* 54 Cal.3d 921, we held that a statute supplying the parameters for the price term of a contract, and requiring one party to perform certain acts as part of the process of making the contract, "does not remove the contract-making process from the purview of the common law unless the Legislature intends to occupy the field." (*Id.* at p. 929.) Our decision in *Moorpark* indicated that where a statutory scheme neither explicitly defines an offer nor, by the breadth of its regulation, implicitly supplants the common law of contracts, general common law principles govern the question whether an effective legal offer has been made. (*Id.* at p. 930.)

Section 11713.1(e) does not eliminate mistake as a ground for rescission of the contract, as plaintiff contends. The statute is part of a regulatory scheme that subjects licensed dealers to potential discipline for a violation of the duties set forth therein. As in *Moorpark, supra,* 54 Cal.3d 921, nothing in section 11713.1(e) or the regulatory scheme reflects a legislative intent completely to remove the contract-making process from the purview of the common law. At most, section 11713.1(e) reflects an intent to *supplement* contract law by establishing a ceiling for the price term of a contract for the sale of an advertised vehicle. Therefore, the common law, including the law governing mistake, remains applicable.

In *Kemper, supra,* 37 Cal.2d 696, we rejected a contention similar to that advanced by plaintiff. Relying upon a charter provision that "no bid shall be withdrawn" after being opened and declared, the city maintained that the public interest precluded the contractor from having the right to rescind its

bid for mistake. Our decision stated that the offer remained subject to rescission upon proper equitable grounds, and that prior cases did not recognize any distinction between public and private contracts with regard to the right of equitable relief. (*Id.* at p. 704.)[8] In support of this statement, we quoted from *Moffett, Hodgkins &c. Co. v. Rochester* (1900) 178 U.S. 373, 386 [20 S.Ct. 957, 961, 44 L.Ed. 1108], which had rejected a similar argument, as follows: " 'If the [city is] correct in [its] contention[,] there is absolutely no redress for a bidder for public work, no matter how aggravated or palpable his blunder. The moment his proposal is opened by the executive board he is held as in a grasp of steel. There is no remedy, no escape. If, through an error of his clerk, he has agreed to do work worth a million dollars for ten dollars, he must be held to the strict letter of his contract, while equity stands by with folded hands and sees him driven to bankruptcy. The [city's] position admits of no compromise, no exception, no middle ground.' " (*Kemper, supra,* 37 Cal.2d at p. 704.)

In *Kemper* we further rejected the city's contention that a statement in the official bid form that bidders " 'will not be released on account of errors' " (*Kemper, supra,* 37 Cal.2d at p. 703) required all contractors to waive the right to seek relief for mistake. Our decision recognized a distinction between mere mechanical or clerical errors in tabulating or transcribing figures, on the one hand, and errors of judgment, on the other. "Where a person is denied relief because of an error in judgment, the agreement which is enforced is the one he intended to make, whereas if he is denied relief from a clerical error, he is forced to perform an agreement he had no intention of making. . . . If we were to give the language the sweeping construction contended for by the city, it would mean holding that the contractor intended to assume the risk of a clerical error no matter in what circumstances it might occur or how serious it might be. Such interpretation is contrary to common sense and ordinary business understanding and would result in the loss of heretofore well-established equitable rights to relief from certain types of mistake." (*Id.* at pp. 703-704.)

As in the foregoing cases, if we were to accept plaintiff's position that section 11713.1(e), by requiring a dealer to sell a vehicle at the advertised price, necessarily precludes relief for mistake, and that the dealer always must be held to the strict terms of a contract arising from an advertisement, we would be holding that the dealer intended to assume the risk of all typographical errors in advertisements, no matter how serious the error and regardless of the circumstances in which the error was made. For example, if an automobile dealer proofread an advertisement but, through carelessness,

---

[8]Subsequently, the Legislature enacted specific procedures for obtaining relief for a mistaken bid submitted to a public entity. (Pub. Contract Code, § 5100 et seq.)

failed to detect a typographical error listing a $75,000 automobile for sale at $75, the defense of mistake would be unavailable to the dealer.[9]

The trial court expressed a similar concern when it posed the following hypothetical to plaintiff. "The perennial mistakes in ads are infinite. You can move the decimal point over two, three places, so you are selling a $1,000,000 item for $100, any ridiculous example you can think of. [¶] If your theory is correct, that a printout would constitute an unconditional offer to sell, would that same result be attained if we had one of these mistakes, where some printer, instead of printing a million, left off some of the zeros, put in a thousand, and you are selling a million dollar yacht, and it came out to a thousand dollars, would a person be entitled, under your theory of the law, to say here's my thousand bucks, and I would like to sail away?" Consistent with his contention that the violation of section 11713.1(e) constitutes the neglect of a legal duty, plaintiff responded that the answer to the court's hypothetical is "yes." Plaintiff reiterated his position in this regard at oral argument in this court.[10]

Giving such an effect to section 11713.1(e), however, "is contrary to common sense and ordinary business understanding and would result in the loss of heretofore well-established equitable rights to relief from certain types of mistake." (*Kemper, supra,* 37 Cal.2d at p. 704.) Although this statute obviously reflects an important public policy of protecting consumers from injury caused by unscrupulous dealers who publish deceptive advertisements (see *Ford Dealers Assn. v. Department of Motor Vehicles* (1982) 32 Cal.3d 347, 356 [185 Cal.Rptr. 453, 650 P.2d 328]), and establishes that automobile dealers that violate the statute can suffer the suspension or revocation of their licenses, there is no indication in the statutory scheme that the Legislature intended to impose such an absolute *contractual* obligation upon automobile dealers who make an honest mistake. Therefore,

---

[9]Pursuant to Civil Code section 1577 and the Restatement Second of Contracts section 157, the neglect of a legal duty amounting to a breach of the duty of good faith and fair dealing bars relief from mistake, whether or not the other party has reason to know of the mistake.

[10]In addition, if we were to accept plaintiff's position that Vehicle Code section 11713.1(e) imposes an absolute contractual obligation upon dealers to sell a vehicle at the advertised price to any person—notwithstanding any legal justification for refusing to do so—a dealer would be required to enter into a sales contract with an individual who obviously lacks the mental capacity to contract. (See Civ. Code, §§ 38, 1556, 1557.) And, under plaintiff's view of the statute, a dealer would be required to sell a vehicle at an erroneous price mistakenly broadcast by a radio announcer, even though the dealer would have had no opportunity to correct the announcer's error before it was made. Pursuant to analogous consumer protection legislation, an unintentional publication of a false or misleading advertisement does not result in statutory liability. (See Civ. Code, § 1784 [no damages may be awarded for unintentionally false advertising resulting from bona fide error]; Bus. & Prof. Code, § 17502 [newspaper protected from liability for unknowingly publishing false advertising].)

absent evidence of bad faith, the violation of any obligation imposed by this statute does not constitute the neglect of a legal duty that precludes rescission for unilateral mistake of fact.

■ The municipal court made an express finding of fact that "the mistake on the part of [defendant] was made in good faith[;] it was an honest mistake, not intended to deceive the public . . . ." The Court of Appeal correctly recognized that "[w]e must, of course, accept the trial court's finding that there was a 'good faith' mistake that caused the error in the advertisement." The evidence presented at trial compellingly supports this finding.

Defendant regularly advertises in five local newspapers. Defendant's advertising manager, Crystal Wadsworth, testified that ordinarily she meets with Kristen Berman, a representative of the Daily Pilot, on Tuesdays, Wednesdays, and Thursdays to review proof sheets of the advertisement that will appear in the newspaper the following weekend. When Wadsworth met with Berman on Wednesday, April 23, 1997, defendant's proposed advertisement listed a 1995 Jaguar XJ6 Vanden Plas without specifying a price, as it had the preceding week. On Thursday, April 24, a sales manager instructed Wadsworth to substitute a 1994 Jaguar XJ6 with a price of $25,995. The same day, Wadsworth met with Berman and conveyed to her this new information. Wadsworth did not expect to see another proof sheet reflecting this change, however, because she does not work on Friday, and the Daily Pilot goes to press on Friday and the edition in question came out on Saturday, April 26.

Berman testified that the revised advertisement was prepared by the composing department of the Daily Pilot. Berman proofread the advertisement, as she does all advertisements for which she is responsible, but Berman did not notice that it listed the 1995 Jaguar XJ6 Vanden Plas for sale at $25,995, instead of listing the 1994 Jaguar at that price. Both Berman and Wadsworth first learned of the mistake on Monday, April 28, 1997. Defendant's sales manager first became aware of the mistake after plaintiff attempted to purchase the automobile on Sunday, April 27. Berman confirmed in a letter of retraction that Berman's proofreading error had led to the mistake in the advertisement.

Defendant's erroneous advertisement in the Daily Pilot listed 16 used automobiles for sale. Each of the advertisements prepared for several newspapers in late April 1997, except for the one in the Daily Pilot, correctly identified the 1994 Jaguar XJ6 for sale at a price of $25,995. In May 1997, defendant's advertisements in several newspapers listed the 1995 Jaguar XJ6

Vanden Plas for sale at $37,995, and defendant subsequently sold the automobile for $38,399. Defendant had paid $35,000 for the vehicle.

Evidence at trial established that defendant adheres to the following procedures when an incorrect advertisement is discovered. Defendant immediately contacts the newspaper and requests a letter of retraction. Copies of any erroneous advertisements are provided to the sales staff, the error is explained to them, and the mistake is circled in red and posted on a bulletin board at the dealership. The sales staff informs customers of any advertising errors of which they are aware.

No evidence presented at trial suggested that defendant knew of the mistake before plaintiff attempted to purchase the automobile, that defendant intended to mislead customers, or that it had adopted a practice of deliberate indifference regarding errors in advertisements.[11] Wadsworth regularly reviews proof sheets for the numerous advertisements placed by defendant, and representatives of the newspapers, including the Daily Pilot, also proofread defendant's advertisements to ensure they are accurate. Defendant follows procedures for notifying its sales staff and customers of errors of which it becomes aware. The uncontradicted evidence established that the Daily Pilot made the proofreading error resulting in defendant's mistake.

Defendant's fault consisted of failing to review a proof sheet reflecting the change made on Thursday, April 24, 1997, and/or the actual advertisement appearing in the April 26 edition of the Daily Pilot—choosing instead to rely upon the Daily Pilot's advertising staff to proofread the revised version. Although, as the Court of Appeal found, such an omission might constitute negligence, it does not involve a breach of defendant's duty of good faith and fair dealing that should preclude equitable relief for mistake. In these circumstances, it would not be reasonable for this court to allocate the risk of the mistake to defendant.

As indicated above, the Restatement Second of Contracts provides that during the negotiation stage of a contract "each party is held to a degree of responsibility appropriate to the justifiable expectations of the other." (Rest.2d Contracts, § 157, com. a, p. 417.) No consumer reasonably can

---

[11]Plaintiff attempted to establish at trial that defendant continued to advertise the 1995 Jaguar at an erroneous price. He introduced into evidence defendant's advertisements in the May 31, 1997, edition of two newspapers. One listed a price of $37,995 for the automobile; the other stated a price of $35,995. Wadsworth, however, offered a reasonable explanation for the discrepancy. After consistently advertising the vehicle for $37,995 in several newspapers throughout the month of May, defendant reduced the price by $2,000 at the end of the month, and the two newspapers had gone to press on different dates. The trial court's findings establish that the court found this testimony to be credible.

expect 100 percent accuracy in each and every price appearing in countless automobile advertisements listing numerous vehicles for sale. The degree of responsibility plaintiff asks this court to impose upon automobile dealers would amount to strict contract liability for any typographical error in the price of an advertised automobile, no matter how serious the error or how blameless the dealer. We are unaware of any other situation in which an individual or business is held to such a standard under the law of contracts. Defendant's good faith, isolated mistake does not constitute the type of extreme case in which its fault constitutes the neglect of a legal duty that bars equitable relief. Therefore, whether or not defendant's failure to sell the automobile to plaintiff could amount to a violation of section 11713.1(e) —an issue that is not before us—defendant's conduct in the present case does not preclude rescission.[12]

 The final factor defendant must establish before obtaining rescission based upon mistake is that enforcement of the contract for the sale of the 1995 Jaguar XJ6 Vanden Plas at $25,995 would be unconscionable. Although the standards of unconscionability warranting rescission for mistake are similar to those for unconscionability justifying a court's refusal to enforce a contract or term, the general rule governing the latter situation (Civ. Code, § 1670.5) is inapplicable here, because unconscionability resulting from mistake does not appear at the time the contract is made. (Rest.2d Contracts, § 153, com. c, p. 395; 1 Witkin, *supra*, Contracts, § 370, pp. 337-338.)

An unconscionable contract ordinarily involves both a procedural and a substantive element: (1) oppression or surprise due to unequal bargaining power, and (2) overly harsh or one-sided results. (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 114 [99 Cal.Rptr.2d 745, 6 P.3d 669].) Nevertheless, " 'a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation, that creates the terms, in proportion to the greater harshness or unreasonableness of the substantive terms themselves.' [Citations.]" (*Ibid.*) For example, the Restatement Second of Contracts states that "[i]nadequacy of consideration does not of itself invalidate a bargain, but gross disparity in the values exchanged may be an important factor in a determination that a contract is

---

[12]Amicus curiae National Association of Consumer Advocates asserts that plaintiff has a private right of action pursuant to section 11713.1(e) and urges this court to authorize plaintiff's recovery of damages for defendant's alleged violation of this statute. As far as the record and briefing indicate, however, plaintiff's complaint did not include a cause of action for violation of section 11713.1(e), but instead simply referred to the statute in connection with his cause of action for negligence, which he has abandoned. In any event, because plaintiff never raised the statutory theory of recovery now supported by amicus curiae, we shall not consider it.

unconscionable and may be sufficient ground, without more, for denying specific performance." (Rest.2d Contracts, § 208, com. c, p. 108.) In ascertaining whether rescission is warranted for a unilateral mistake of fact, substantive unconscionability often will constitute the determinative factor, because the oppression and surprise ordinarily results from the mistake—not from inequality in bargaining power. Accordingly, even though defendant is not the weaker party to the contract and its mistake did not result from unequal bargaining power, defendant was surprised by the mistake, and in these circumstances overly harsh or one-sided results are sufficient to establish unconscionability entitling defendant to rescission.

Our previous cases support this approach. In *Kemper, supra,* 37 Cal.2d 696, we held that enforcement of the city's option to accept a construction company's bid, which was 28 percent less than the intended bid, would be unconscionable. Our decision reasoned that (1) the plaintiff gave prompt notice upon discovering the facts entitling it to rescind, (2) the city therefore was aware of the clerical error before it exercised the option, (3) the city already had awarded the contract to the next lowest bidder, (4) the company had received nothing of value it was required to restore to the city, and (5) "the city will not be heard to complain that it cannot be placed in statu quo because it will not have the benefit of an inequitable bargain." (*Id.* at p. 703.) Therefore, "under all the circumstances, it appears that it would be unjust and unfair to permit the city to take advantage of the company's mistake." (*Id.* at pp. 702-703.) Nothing in our decision in *Kemper* suggested that the mistake resulted from surprise related to inequality in the bargaining process. (Accord, *Farmers Sav. Bank, Joice v. Gerhart* (Iowa 1985) 372 N.W.2d 238, 243-245 [holding unconscionable the enforcement of sheriff's sale against bank that overbid because of a mistake caused by negligence of its own attorney].) Similarly, in *Elsinore, supra,* 54 Cal.2d 380, we authorized rescission of a bid based upon a clerical error, without suggesting any procedural unconscionability, even where the other party afforded the contractor an opportunity to verify the accuracy of the bid before it was accepted.

In the present case, enforcing the contract with the mistaken price of $25,995 would require defendant to sell the vehicle to plaintiff for $12,000 less than the intended advertised price of $37,995—an error amounting to 32 percent of the price defendant intended. Defendant subsequently sold the automobile for slightly more than the intended advertised price, suggesting that that price reflected its actual market value. Defendant had paid $35,000 for the 1995 Jaguar and incurred costs in advertising, preparing, displaying, and attempting to sell the vehicle. Therefore, defendant would lose more than $9,000 of its original investment in the automobile.

Plaintiff, on the other hand, would obtain a $12,000 windfall if the contract were enforced, simply because he traveled to the dealership and stated that he was prepared to pay the advertised price.

These circumstances are comparable to those in our prior decisions authorizing rescission on the ground that enforcing a contract with a mistaken price term would be unconscionable. Defendant's 32 percent error in the price exceeds the amount of the errors in cases such as *Kemper* and *Elsinore*. For example, in *Elsinore, supra*, 54 Cal.2d at page 389, we authorized rescission for a $6,500 error in a bid that was intended to be $96,494—a mistake of approximately 7 percent in the intended contract price. As in the foregoing cases, plaintiff was informed of the mistake as soon as defendant discovered it. Defendant's sales manager, when he first learned of the mistake in the advertisement, explained the error to plaintiff, apologized, and offered to pay for plaintiff's fuel, time, and effort expended in traveling to the dealership to examine the automobile. Plaintiff refused this offer to be restored to the status quo. Like the public agencies in *Kemper* and *Elsinore*, plaintiff should not be permitted to take advantage of defendant's honest mistake that resulted in an unfair, one-sided contract. (Cf. *Drennan v. Star Paving Co.* (1958) 51 Cal.2d 409, 415-416 [333 P.2d 757] [no rescission of mistaken bid where other party detrimentally altered his position in reasonable reliance upon the bid and could not be restored to the status quo].)

The circumstance that section 11713.1(e) makes it unlawful for a dealer not to sell a vehicle at the advertised price does not preclude a finding that enforcing an automobile sales contract containing a mistaken price would be unconscionable. Just as the statute does not eliminate the defense of mistake, as established above, the statute also does not dictate that enforcing a contract with an erroneous advertised price necessarily must be considered equitable and fair for purposes of deciding whether the dealer is entitled to rescission on the ground of mistake. In *Kemper, supra*, 37 Cal.2d 696, we concluded that it would be unconscionable to bar rescission of a bid pursuant to a city charter provision prohibiting the withdrawal of bids, where "it appear[ed] that it would be unjust and unfair to permit the city to take advantage of the company's mistake." (*Id.* at p. 703.) Thus, notwithstanding the public interest underlying the charter provision, our decision in *Kemper* precluded the city from relying upon that provision to impose absolute contractual liability upon the contractor. (*Id.* at p. 704.)

Accordingly, section 11713.1(e) does not undermine our determination that, under the circumstances, enforcement of the contract for the sale of the

1995 Jaguar XJ6 Vanden Plas at the $25,995 mistaken price would be unconscionable. The other requirements for rescission on the ground of unilateral mistake have been established. Defendant entered into the contract because of its mistake regarding a basic assumption, the price. The $12,000 loss that would result from enforcement of the contract has a material effect upon the agreed exchange of performances that is adverse to defendant. Furthermore, defendant did not neglect any legal duty within the meaning of Civil Code section 1577 or breach any duty of good faith and fair dealing in the steps leading to the formation of the contract. Plaintiff refused defendant's offer to compensate him for his actual losses in responding to the advertisement. "The law does not penalize for negligence beyond requiring compensation for the loss it has caused." (3 Corbin, Contracts, *supra*, § 609, p. 684.) In this situation, it would not be reasonable for this court to allocate the risk of the mistake to defendant.

Having determined that defendant satisfied the requirements for rescission of the contract on the ground of unilateral mistake of fact, we conclude that the municipal court correctly entered judgment in defendant's favor.

## V

The judgment of the Court of Appeal is reversed.

Kennard, J., Chin, J., and Brown, J., concurred.

**WERDEGAR, J.,** Dissenting.—Although I agree with the majority's conclusion that an enforceable contract was formed between the parties, I respectfully dissent from the majority's grant of contractual rescission to defendant RRL Corporation, relief that is both unsolicited and procedurally irregular. As the majority implicitly acknowledges, defendant did not seek in the trial court to rescind its contract with plaintiff. (Maj. opn., *ante*, at p. 278, fn. 5.) But the majority neglects to note, further, that at no point on appeal or on review in this court has defendant argued for rescission; defendant's position throughout has been, instead, that no contract was formed between plaintiff and itself. Thus, neither the petition for review nor the answer, which ordinarily delimit the issues to be briefed in this court (Cal. Rules of Court, rule 29.3(c)), so much as mentions rescission. Even at oral argument, counsel for defendant resisted the suggestion that he was seeking rescission, viewing that position as a concession that a contract had been formed, although counsel did eventually agree he "would be pleased to prevail on any theory."

The possibility of rescission appears to have been raised first by amici curiae. Because amici curiae are, like the parties, expected to restrict their

briefs to the issues on review (see Cal. Rules of Court, rule 14(b)), plaintiff justifiably limited his response to a few lines, noting only that defendant had not sought rescission and that the case of *M. F. Kemper Const. Co. v. City of L. A.* (1951) 37 Cal.2d 696 [235 P.2d 7], upon which amici curiae (like the majority) chiefly relied, appeared distinguishable. At oral argument, when questioning from the bench made clear the court's interest in rescission, counsel for plaintiff requested the opportunity to brief the question if it was "significant to the court's consideration" of the case. The majority nevertheless decides the issue in favor of defendant, rather than giving plaintiff an opportunity to brief it by transferring the case to the Court of Appeal.

Rescission may be asserted in an answer or cross-complaint, or by other notice to the nonrescinding party. (Civ. Code, §§ 1691, 1692.) But the party seeking to rescind must give such notice "promptly upon discovering the facts which entitle him to rescind." (Civ. Code, § 1691.) Delay in giving notice is grounds for denying relief if the nonrescinding party has been substantially prejudiced. (Civ. Code, § 1693.) Defendant here, of course, has never given any actual notice of rescission, by pleading or otherwise. To the extent defense counsel's oral expression of willingness to accept rescission is deemed equivalent to notice, plaintiff should, at the least, be permitted to brief the question of prejudice on transfer to the Court of Appeal. Although I cannot predict what briefing would reveal, prejudice may lie, for example, in the costs of maintaining this suit and appeal, which could presumably have been resolved more expeditiously had defendant earlier asserted the single defense to which the majority now holds it was entitled. (See *Citicorp Real Estate, Inc. v. Smith* (9th Cir. 1998) 155 F.3d 1097, 1103 [unexcused delay in pleading rescission, during litigation over contract, bars relief under Civ. Code, §§ 1691 and 1693]; *Doctor v. Lakeridge Const. Co.* (1967) 252 Cal.App.2d 715, 720 [60 Cal.Rptr. 824] [same].)[1]

As analyzed by the majority, the question of defendant's equitable entitlement to rescission turns principally on two subsidiary questions: whether defendant should be deemed to bear the risk of an error in the advertisement; and whether enforcement of the contract as formed would be unconscionable. (Maj. opn., *ante*, at pp. 283-288, 291-292.) Although the parties have

---

[1] The majority, citing *Wilson v. Lewis* (1980) 106 Cal.App.3d 802 [165 Cal.Rptr. 396], argues that defendant gave oral notice of rescission when its employees told plaintiff the advertised price was erroneous. (Maj. opn., *ante*, at p. 279, fn. 5.) *Wilson*, in which an owner of real property signed a written agreement to sell, but telephoned the buyer's agent the next day to "repudiat[e]" the agreement (*Wilson, supra*, at p. 807), is clearly distinguishable. Here, while plaintiff wished to conclude a contract, defendant's agents repeatedly told him they *would not sell* him the vehicle at the advertised price. In any event, the majority's invention of an oral rescission theory unaddressed by the parties illustrates my principal objection to its approach, that it decides debatable issues regarding the propriety of rescission relief without full briefing and informed deliberation.

tried and argued the effect of the mistake—because it related to defendant's claim the mistake vitiated its intent to contract—they have neither tried nor argued the question of unconscionability. (The trial court's statement of decision does not mention unconscionability.) The majority's apparent assumption (maj. opn., *ante*, at pp. 278-279, fn. 5) that all evidence significant to rescission was presented below is, therefore, unfounded. Again, it is not the place of a reviewing court to speculate on what evidence and argument might have been presented had the parties litigated different issues than they did, but presumably additional evidence could have been presented as to the (probably slight) economic impact enforcement would have on defendant, as well as any lost opportunities or other costs suffered by plaintiff resulting from his seeking to hold defendant to performance of the contract. (See Civ. Code, § 1670.5, subd. (b) [parties shall be afforded reasonable opportunity to present evidence relating to unconscionability].)

Finally, under Civil Code section 1692, a court ordering rescission "may require the party to whom such relief is granted to make any compensation to the other which justice may require and may otherwise in its judgment adjust the equities between the parties." Needless to say, the parties have not addressed this equitable question in their briefs, and the majority makes no provision for such compensation.

I acknowledge the principle that a judgment is to be affirmed if correct on any ground. I do not, however, believe that rule is properly applied where, as here, (1) the affirmance is based on a factual theory that was not raised at trial and as to which the trial court's statement of decision contains no supportive findings; (2) affirmance would involve the granting of equitable relief that no party has sought and that is subject to unsatisfied procedural requirements; (3) the opposing party has not had a fair opportunity to brief the availability of such equitable relief; and (4) the record does not contain all the facts relevant to such relief. In the present circumstance we should, rather than reverse the Court of Appeal's judgment and thereby reinstate the trial court's judgment for defendant, either affirm the judgment of the Court of Appeal or, at most, transfer the case to that court for briefing and decision on the rescission issue, with a remand for trial on that issue to follow if necessary.

For these reasons, I dissent.

Baxter, J., concurred.

Appellant's petition for a rehearing was denied September 12, 2001, and the opinion was modified to read as printed above. Baxter, J., and Werdegar, J., were of the opinion that the petition should be granted.