Filed 4/26/13  Tamayo v. Cordevalle Golf Club CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| ANA TAMAYO,<br><br>    Plaintiff, Cross-Defendant and Respondent,<br><br>v.<br><br>CORDEVALLE GOLF CLUB, LLC,<br><br>    Defendant and Appellant;<br><br>CORDEVALLE, L.P.,<br><br>    Defendant, Cross-Complainant and Appellant. | H037983<br>(Santa Clara County<br>Super. Ct. No. CV208862) |

## I.  INTRODUCTION

Plaintiff Ana Tamayo filed an action alleging employment-related claims against defendants Cordevalle Golf Club, LLC and Cordevalle, L.P.  Defendants filed a motion to compel arbitration, arguing that Tamayo's claims fell within the scope of an arbitration agreement.  The trial court denied the motion and defendants appeal.  For the reasons stated below, we conclude that the parties did not enter into a binding arbitration agreement, and therefore we will affirm the trial court's order denying the motion to compel arbitration.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  *The Complaint*

In 2011, Tamayo filed a complaint against defendants alleging employment-related claims under Government Code section 12940.  According to the complaint, Tamayo was hired by Cordevalle Golf Club, LLC as a human resources administrative assistant in 2007.  Tamayo alleges she suffered retaliation at work, including the termination of her employment in 2011, for providing deposition testimony in support of another employee, Salvador Velasco, who had claimed discrimination at work.

Both defendants filed an answer, and defendant Cordevalle, L.P. also filed a cross-complaint against Tamayo.  According to these pleadings, Cordevalle, L.P. was Tamayo's employer and the "successor entity" to Cordevalle Golf Club, LLC.  In the cross-complaint, which includes statutory and tort claims against Tamayo, Cordevalle, L.P. alleges that Tamayo accessed her supervisor's email account without authorization, that such actions breached company policy, and that she was accordingly terminated.

### B.  *The Motion to Compel Arbitration*

The defendants also filed a motion to compel arbitration and to stay or dismiss the action.  In the motion, defendants contended that the parties had a written agreement to arbitrate, that all of the claims in Tamayo's complaint were subject to arbitration under the agreement, and that the agreement was not unconscionable.  According to defendants, the arbitration agreement was included in a "Guidebook," which was given to all employees.  Tamayo received the Guidebook two days before she started working for defendants.  Defendants contended that Tamayo signed an acknowledgment of receipt of the Guidebook "wherein she consented to the arbitration of any controversy concerning her employment."  Defendants further contended that Tamayo signed a "New Hire Checklist" in which she acknowledged receipt of the arbitration agreement.  In support of the motion, defendants provided a declaration from the managing director of the resort where Tamayo had worked, excerpts from the Guidebook, Tamayo's signed

2

acknowledgement concerning the Guidebook, and the New Hire Checklist that she signed.

**1. The arbitration provision in the Guidebook**

The Guidebook contains the following arbitration provision: "Arbitration [¶] Any and all claims or controversies between you and the Company, relating to your employment with the Company, or termination thereof, including claims for breach of contract, tort, employment discrimination (including unlawful harassment), and any violation of any state or federal law shall be resolved by arbitration before a neutral arbitrator in accordance with the then applicable National Rules for the Resolution of Employment Disputes of the American Arbitration Association, including adequate discovery by the parties. However, claims under applicable workers' compensation laws shall not be subject to arbitration. [¶] The Company shall pay the fees and costs of the arbitrator. Each party shall pay for its own costs and attorney's fees, if any. However, if any party prevails on a statutory claim which affords the prevailing party attorney's fees, or if the arbitrator decides on some other basis that fees should be awarded to the prevailing party, then the arbitrator may award reasonable attorney's fees and costs to the prevailing party. The arbitrator shall set forth a written arbitration decision. The arbitrator shall have authority to award all damages that could be awarded in a court of law. [¶] THIS ARBITRATION PROVISION CONSTITUTES A WAIVER OF THE RIGHT TO A TRIAL BY JURY OF ANY MATTERS SUBJECT TO ARBITRATION."

**2. The acknowledgment of receipt**

Tamayo signed an acknowledgment of receipt, which is contained on the last page (page 70) of the Guidebook. The acknowledgment of receipt states: "OUR CULTURE: A GUIDEBOOK [¶] ACKNOWLEDGEMENT OF RECEIPT [¶] I hereby acknowledge that I have received, read, and understand all of the information contained in Our Culture: A Guidebook (the 'Guide') of CordeValle. In consideration of my

3

employment by CordeValle, knowing that such employment is dependent upon my compliance with CordeValle's policies, I agree to abide by those policies at all times."

### 3.  The New Hire Checklist

Tamayo also signed a New Hire Checklist, which states in part:  "The following information was provided, reviewed and/or completed:  [¶] . . . [¶] 7.  Arbitration Agreement  [¶] . . . [¶]  18.  Internal Guest Guidebook and Guidebook Acknowledgement  [¶] . . . [¶]  I have been provided with the information listed above and have had the opportunity to discuss this information with a Human Resources Representative."

### C.  *Opposition to the Motion to Compel Arbitration*

In opposition, Tamayo contended that there was no arbitration agreement between the parties, and that the arbitration provision was otherwise unenforceable because it was unconscionable.  Regarding the nonexistence of an arbitration agreement, Tamayo contended that the first page of the Guidebook contained "numerous disclaimers" that "defeat any notion that the Guidebook could objectively be understood to create a binding contract of any kind."  Tamayo further contended that her signed acknowledgement of receipt of the Guidebook established only that she agreed to abide by employer "policies," and that the arbitration provision or purported arbitration contract in the Guidebook could not be construed to constitute such a policy.  Tamayo also contended that the New Hire Checklist she signed contained separate references to an arbitration agreement and the Guidebook/acknowledgement.  Thus, according to Tamayo, the checklist suggested there was a stand-alone arbitration agreement, which her employer had used in the past and which Tamayo never received or executed, rather than an arbitration agreement contained in the Guidebook.

Alternatively, assuming the parties had formed an agreement to arbitrate, Tamayo contended that the agreement was procedurally and substantively unconscionable. Regarding procedural unconscionability, Tamayo contended the arbitration agreement

was a contract of adhesion because all employees were given the same agreement, Tamayo had no bargaining power, and her assent to arbitration was a condition precedent to the offer of employment. Further, the arbitration provision was on page 31 of the 70-page Guidebook, and the provision was not pointed out to her or explained to her. In addition, the arbitration provision referred to certain rules of the American Arbitration Association (AAA), but Tamayo was not provided with a copy of those rules. Regarding substantive unconscionability, Tamayo contended the arbitration agreement required only her to arbitrate and not the employer, based on the disclaimers on the first page of the Guidebook and the language of her signed acknowledgement of receipt. Further, the Guidebook provided that the employer could unilaterally modify or revoke the policies and procedures contained therein. Tamayo contended that the offending provisions could not be severed from the agreement.

In opposition to the motion to compel arbitration, Tamayo filed a copy of the 70-page Guidebook that she had received during the hiring process, a supporting declaration, a declaration from counsel, and a request for judicial notice.

**1. The first page of the Guidebook**

The first page of the Guidebook states as follows: "CORDEVALLE [¶] . . . [¶] Our Culture: A Guidebook [¶] All organizations and families have guidelines by which they live and behave. This guidebook outlines our culture as a company and the guidelines by which we must agree to work. [¶] Our Culture: A Guidebook ("Guide") summarizes the employment policies and procedures in effect at CordeValle, A Rosewood Resort. The Guide is effective immediately and is applicable to all Internal Guests regardless of their date of employment. CordeValle and/or Rosewood Hotels and Resorts (the 'Company') may from time to time unilaterally modify, revoke, suspend, terminate or change any of the policies and procedures contained in this Guide, in whole or in part. [¶] None of the procedures, policies, or benefits outlined in this Guide are intended to confer any rights or privileges upon Internal Guests, or to entitle Internal

5

Guests to be or remain employed. This Guide is presented as a matter of information only, and does not constitute a contract of employment; it does not create property rights in an Internal Guest's job; nor is it an inflexible set of rules and regulations. Internal Guests of the Company are 'at will.' This means that employment is not guaranteed for any period of time, and can be terminated by either the Internal Guest or the Company at any time, and for any or no reason."

### 2. The declarations by Tamayo and counsel

In her declaration, Tamayo stated that she had worked in defendants' human resources department, and that "[t]he Guidebook's use of the term 'Internal Guests' refers to CordeValle employees." She further stated that she was not provided with an opportunity to negotiate any of the content of the Guidebook, her "signing of the Guidebook was required in order for [her] to gain employment with CordeValle," and she was told words to the effect that she " 'need[ed] to sign the Guidebook as a condition of employment.' " Further, no one pointed out the arbitration provision to her, and she was not provided with a copy of any arbitration rules. With respect to the New Hire Checklist and its reference to an arbitration agreement in item number seven, Tamayo stated that no one spoke to her about or provided her with such a separate agreement.

Tamayo's counsel indicated in a declaration that he was the attorney of record for Salvador Velasco in Velasco's separate lawsuit against Cordevalle Golf Club. In that lawsuit, "CordeValle" had produced Velasco's personnel file, and it contained a stand-alone arbitration agreement that Velasco had signed in 2004. Tamayo indicated in her declaration that she never received such a stand-alone arbitration agreement during her employment.

In the request for judicial notice, Tamayo sought judicial notice of her complaint; Cordevalle, L.P.'s cross-complaint; and AAA's "Employment Arbitration Rules and Mediation Procedures," a more than 60-page document apparently effective 2010.

6

**D.**  *Reply in Support of the Motion to Compel Arbitration*

In their reply brief, defendants pointed to Tamayo's admission in her declaration that she was told she had to sign the Guidebook as a condition of employment. Defendants contended that Tamayo "necessarily assented" to the arbitration agreement "by accepting employment . . . under the terms of the Guidebook containing the arbitration provision." Defendants further contended that, even if the agreement was procedurally unconscionable, it was not substantively unconscionable, and therefore the agreement was enforceable.

**E.**  *The Trial Court's Order*

On February 21, 2012, a hearing was held on defendants' motion to compel arbitration. The trial court observed that the "purported arbitration agreement" was a "half page" long, contained within a 70-page document, and not signed by the employer. The court did not believe there was a "meeting of the minds" by the parties with respect to an agreement to arbitrate. That same day, the court filed an order denying defendants' motion to compel arbitration and stay the action. In the written order, the trial court did not explain the basis for the denial of the motion.

## III.  DISCUSSION

Defendants appeal from the order denying their motion to compel arbitration and stay the action. An order denying a motion to compel arbitration is appealable under Code of Civil Procedure section 1294, subdivision (a).[1]

On appeal, defendants argue that the trial court erred in denying their motion. First, defendants contend that the parties assented to mandatory arbitration. Among other evidence, defendants point to the Guidebook, which contains the arbitration provision, and to the signed acknowledgment form, in which Tamayo agreed to the policies

---

[1] All statutory references hereafter are to the Code of Civil Procedure unless otherwise indicated.

contained in the Guidebook.  Second, defendants contend that the arbitration agreement has only a "minor degree" of procedural unconscionability and, in the absence of any substantive unconscionability, the agreement is enforceable.

Before addressing the substance of defendants' contentions, we will briefly review the statutory scheme that governs private arbitration in California and the standard of review that applies to an order denying a motion to compel arbitration.

## A.  *The Statutory Scheme and the Standard of Review*

"Title 9 of the Code of Civil Procedure . . . represents a comprehensive statutory scheme regulating private arbitration in this state.  (§ 1280 et seq.)" (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9 (*Moncharsh*).)  "The fundamental premise of the scheme is that '[a] written agreement to submit [either a present or future controversy] to arbitration . . . is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract.'  ([§] 1281.)" (*Vanderberg v. Superior Court* (1999) 21 Cal.4th 815, 830, fn. omitted.)

"Through this detailed statutory scheme, the Legislature has expressed a 'strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution.' [Citations.]  Consequently, courts will ' "indulge in every intendment to give effect to such proceedings." ' [Citations.]" (*Moncharsh*, *supra,* 3 Cal.4th at p. 9.)  Nevertheless, the public policy is not absolute.  " '[T]he policy favoring arbitration cannot displace the necessity for a voluntary *agreement* to arbitrate.' [Citations.]" (*Victoria v. Superior Court* (1985) 40 Cal.3d 734, 739; accord *Mission Viejo Emergency Medical Associates v. Beta Healthcare Group* (2011) 197 Cal.App.4th 1146, 1153.)

Section 1281.2 provides for trial court enforcement of private arbitration agreements:  "On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the

8

controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that: [¶] . . . [¶] Grounds exist for the revocation of the agreement." (§ 1281.2, subd. (b).) In the trial court, the party seeking arbitration bears the burden of proving the existence of an arbitration agreement by the preponderance of the evidence, and the party opposing arbitration bears the burden of proving by a preponderance of the evidence any defense, such as unconscionability. (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236 (*Pinnacle*); *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972 (*Engalla*).) In the summary proceedings under section 1281.2, "the trial court sits as a trier of fact, weighing all the affidavits, declarations, and other documentary evidence, as well as oral testimony received at the court's discretion, to reach a final determination." (*Engalla*, *supra*, at p. 972.)

The standard of review where the trial court resolved disputed facts in ruling on a motion to compel arbitration is substantial evidence. (*Brown v. Wells Fargo Bank, NA* (2008) 168 Cal.App.4th 938, 953.) Where the facts were undisputed, the standard of review is de novo. (*Ibid*.; *Pinnacle*, *supra*, 55 Cal.4th at p. 236.) If only a question of law is involved, the standard of review is also de novo. (*Robertson v. Health Net of California, Inc.* (2005) 132 Cal.App.4th 1419, 1425.)

## B. *Absence of an Agreement to Arbitrate*

We understand defendants to contend that Tamayo's signature on the Guidebook's acknowledgment of receipt reflects her consent to the arbitration provision contained in the Guidebook. Defendants further contend that it is irrelevant whether a separate stand-alone arbitration agreement had been given to employees in the past, and that there is no evidence that defendants had been using a separate stand-alone agreement at the time Tamayo became employed.

Tamayo argues that the "disclaimers" contained in the first page of the Guidebook "defeat any notion that the Guidebook could objectively be understood to create a

9

binding contract of any kind." She further contends that, although she agreed to abide by defendant's policies when she signed the Guidebook's acknowledgement of receipt, she never signed or initialed the arbitration provision itself. She contends that the New Hire Checklist and Salvador Velasco's stand-alone arbitration agreement establish that a separate stand-alone arbitration contract was intended for her, but that she never received or signed such a contract.

"In California, '[g]eneral principles of contract law determine whether the parties have entered a binding agreement to arbitrate.' [Citations.]" (*Pinnacle*, *supra*, 55 Cal.4th at p. 236.) "An essential element of any contract is the consent of the parties, or mutual assent. (Civ. Code, §§ 1550, subd. 2, 1565, subd. 2.)" (*Donovan v. RRL Corp.* (2001) 26 Cal.4th 261, 270 (*Donovan*).) Further, the consent of the parties to a contract must be communicated by each party to the other. (Civ. Code, § 1565, subd. 3.) "Mutual assent is determined under an objective standard applied to the outward manifestations or expressions of the parties, i.e., the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings. [Citation.]" (*Alexander v. Codemasters Group Limited* (2002) 104 Cal.App.4th 129, 141 (*Alexander*).)

"Mutual assent usually is manifested by an offer communicated to the offeree and an acceptance communicated to the offeror. [Citation.] ' " 'An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it.' " [Citations.]' [Citation.] . . . The objective manifestation of the party's assent ordinarily controls, and the pertinent inquiry is whether the individual to whom the communication was made had reason to believe that it was intended as an offer. [Citations.]" (*Donovan*, *supra*, 26 Cal.4th at pp. 270-271.)

"Generally, an arbitration agreement must be memorialized in writing. [Citation.] A party's acceptance of an agreement to arbitrate may be express, as where a party signs the agreement. A signed agreement is not necessary, however, and a party's acceptance

may be implied in fact (e.g., [*Craig v. Brown & Root, Inc.* (2000) 84 Cal.App.4th 416,] 420 [employee's continued employment constitutes acceptance of an arbitration agreement proposed by the employer]) . . . . An arbitration clause within a contract may be binding on a party even if the party never actually read the clause. [Citation.]" (*Pinnacle*, *supra*, 55 Cal.4th at p. 236.)

In this case, defendants fail to show that the parties entered into a binding agreement to arbitrate. The last page of the Guidebook, which is Tamayo's signed acknowledgment of receipt, states that Tamayo has read and understands all of the information contained in the Guidebook. In the second sentence of the acknowledgement of receipt, Tamayo states: "*In consideration of my employment by CordeValle*, knowing that *such employment is dependent upon* my compliance with CordeValle's policies, *I agree to abide by* those policies at all times." (Italics added.) We understand defendants to contend that this page of the Guidebook indicates that the parties entered into a contract in which Tamayo agreed to abide by defendants' policies contained in the Guidebook, in exchange for employment by defendants.

The first page of the Guidebook states, however, that the Guidebook "does not constitute a contract of employment." The first page further states that "[n]one of the procedures, policies, or benefits outlined in [the Guidebook] are intended to confer any rights or privileges [upon Tamayo], or to entitle [her] to be or remain employed." Further, the Guidebook "is presented as a matter of information only," the Guidebook is not "an inflexible set of rules and regulations," and the policies and procedures contained in the Guidebook "may from time to time" be "unilaterally modif[ied], revoke[d], suspend[ed], terminate[d], or change[d]" by defendants. Although other language in the first page refers to the Guidebook as containing "the guidelines by which we must agree to work," the clear import of the first page is that defendants wanted each employee to comply with the provisions contained in the Guidebook, but they did not want those provisions, which might be unilaterally modified by defendants at any time, to give rise

11

to any enforceable rights, contractual or otherwise, by the employee. In other words, defendants had no intent for themselves to be bound to a contract with an employee regarding employment, benefits, or anything else outlined in the Guidebook. Given this express purpose on page one concerning the content of the Guidebook, we determine that the acknowledgment of receipt on the last page cannot reasonably be construed as manifesting the consent of the parties to a contract, much less consent to a contract to arbitrate. Rather, the first and last pages of the Guidebook reflect the parties' understanding that Tamayo must comply with the policies in the Guidebook while employed by defendants, but that those policies did not give rise to any contractual rights.

On appeal, defendants focus primarily on the language in the acknowledgment of receipt to support their argument that the parties entered into an agreement to arbitrate. Defendants contend that, "whether or not the Guidebook was intended to be a contract, the Guidebook Acknowledgment clearly is. By signing the Guidebook Acknowledgment, Tamayo *agreed* to be bound by the contents of the Guidebook – this is an enforceable promise."

However, in determining whether the parties consented to a contract containing an arbitration provision, we must necessarily consider other portions of the Guidebook in addition to the acknowledgement of receipt on page 70. The acknowledgment of receipt is a part of the Guidebook, and the acknowledgment of receipt makes reference to "all of the information contained in" the Guidebook. As we have explained, the outward expressions of the parties as reflected in the first and last pages of the Guidebook do not manifest the mutual assent of the parties to an agreement to arbitrate. (See *Alexander*, *supra*, 104 Cal.App.4th at p. 141; *Donovan*, *supra*, 26 Cal.4th at pp. 270-271.)

Beyond the Guidebook, we are not persuaded that the separate New Hire Checklist establishes that the parties entered into an arbitration agreement. Defendants refer to the New Hire Checklist in their opening brief to support their argument that all the parties assented to an arbitration agreement. In a footnote in their reply brief, however,

12

defendants state that they are *not* arguing that the checklist "is an arbitration agreement, only that Tamayo was provided the New Hire Form, which indicates that she was *provided information about arbitration* (in this case in the Guidebook) . . . ." (Italics added.) The mere fact that Tamayo was provided with information *about* arbitration certainly does not establish that the parties entered into a binding arbitration agreement.

Defendants cite *24 Hour Fitness, Inc. v. Superior Court* (1998) 66 Cal.App.4th 1199 (*24 Hour Fitness*), to support their contention that a signed acknowledgment concerning a personnel handbook may establish an employee's acceptance of an arbitration agreement contained in the handbook. *24 Hour Fitness* does not help defendants in this case. In *24 Hour Fitness*, the employee signed a personnel handbook acknowledgment that stated, " 'I also read and specifically agree that if there is any dispute arising out of my employment as described in the section called "Arbitration of Disputes" in the handbook, I will submit it exclusively to binding and final arbitration according to the procedures outlined in the "Employment Arbitration Procedures Manual." ' " (*Id.* at p. 1205; see *ibid.*, fn. 1.) The " 'Arbitration of Disputes' " section in the personnel handbook similarly provided: " 'If any dispute arises from your employment with Nautilus, you and Nautilus agree that you both will submit it exclusively to final and binding arbitration. . . . [¶] We agree to settle the dispute according to the provisions of the California Code of Civil Procedure, starting at § 1280, or successor or replacement statutes. . . .' " (*Ibid.*, italics omitted.) The appellate court concluded that the employee had "entered into a valid and enforceable agreement to arbitrate any disputes arising from her employment with Nautilus." (*Id.* at p. 1215.) In contrast to the clear expression of an agreement to arbitrate in the handbook and the signed acknowledgment in *24 Hour Fitness*, in this case as we have explained the Guidebook and acknowledgment form reflect that defendants did *not* intend to be contractually bound by the provisions contained in the Guidebook.

13

Defendants also cite *Circuit City Stores, Inc. v. Najd* (9th Cir. 2002) 294 F.3d 1104 (*Circuit City*), to support their contention that the record reflects their assent to an arbitration agreement because they moved to compel its enforcement. We are not persuaded by defendants' reliance on *Circuit City*. In that case, the employer gave employees a " 'Dispute Resolution Agreement' (the 'DRA')" which provided for binding arbitration of employment-related claims. (*Id.* at p. 1106.) The employees were allowed to opt out of the DRA by returning a form to the employer. The plaintiff employee acknowledged receipt of the material in writing but did not exercise his right to opt out. (*Ibid.*) A federal district court granted the employer's petition to compel arbitration of the employee's claims against the employer. On appeal, the employee argued that (1) the DRA was not supported by adequate consideration because the employer was not required to submit any of its claims to arbitration, and (2) the employee did not assent to the DRA because he did not affirmatively opt in to the program. (*Id*. at pp. 1108-1109.) The Ninth Circuit Court of Appeals rejected the employee's contentions. The court determined that the employer's "promise to be bound by the arbitration process itself serves as adequate consideration." (*Id.* at p. 1108.) Further, the court determined that the circumstances of the case permitted an inference that the employee had "assented to the DRA by failing to exercise his right to opt out of the program." (*Id.* at p. 1109.) There was no dispute in *Circuit City* that the employer had assented to the arbitration agreement. In contrast, the record in the present case fails to demonstrate that defendants intended to be contractually bound by the provisions contained in the Guidebook. As we have explained, the document containing the arbitration provision—the Guidebook— expressly states that the document is not a contract, that it is presented as a matter of information only, and that it does not confer any rights upon the employee. In view of defendants' expressions to *not* be contractually bound by the provisions contained in the Guidebook, the record in this case does not show that the parties assented to an agreement to arbitrate.

14

In sum, we conclude that the parties did not enter into a binding agreement to arbitrate because no document contained in the record can be reasonably construed to manifest the mutual assent of the parties to an agreement to arbitrate. (*Alexander*, *supra*, 104 Cal.App.4th at p. 141; *Donovan*, *supra*, 26 Cal.4th at pp. 270-271.) Accordingly, the trial court did not err in denying defendants' motion to compel arbitration and we will affirm the order. Having reached this conclusion, we need not address the other issues raised by defendants.

## IV. DISPOSITION

The February 21, 2012 order denying the motion to compel arbitration is affirmed. Costs on appeal are awarded to plaintiff Ana Tamayo.

_____
BAMATTRE-MANOUKIAN, J.

WE CONCUR:

_____
ELIA, ACTING P.J.

_____
MÁRQUEZ, J.

15