**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 17-2090

JOSEPH SAVERI LAW FIRM INC., a California corporation; JOSEPH R. SAVERI,

Plaintiffs – Appellees,

v.

MICHAEL E. CRIDEN, P.A., d/b/a Criden & Love, P.A., a Florida corporation,

Defendant - Appellant.

Appeal from the United States District Court for the District of Maryland, at Baltimore. Richard D. Bennett, District Judge. (1:17-cv-01603-RDB)

Argued: December 12, 2018                          Decided: January 14, 2019

Before WILKINSON, MOTZ, and DUNCAN, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Kevin Bruce Love, CRIDEN & LOVE, P.A., South Miami, Florida, for Appellant. James Patrick Ulwick, KRAMON & GRAHAM, PA, Baltimore, Maryland, for Appellees. **ON BRIEF:** Scott H. Phillips, SEMMES, BOWEN & SEMMES, Baltimore, Maryland, for Appellant. Robert H. Bunzel, BARTKO ZANKEL BUNZEL & MILLER, San Francisco, California, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

The dispute here is between two firms that represented plaintiffs in a large antitrust class action. The appellant, Criden & Love, seeks from the Saveri Law Firm a larger share of the award of attorneys' fees in the action, asserting contentions sounding in contract, tort, and unjust enrichment. The district court rejected all of appellant's claims. For the reasons that follow, we affirm.

I.

The relationship between the two firms in this case is a product of the antitrust laws. The Supreme Court held decades ago that the only consumers who can challenge anticompetitive conduct are those who purchase goods or services directly from the supplier. *See Ill. Brick Co. v. Illinois*, 431 U.S. 720 (1977). Since many buyers may be unwilling to rock the boat with their business partners, the universe of potential antitrust plaintiffs is therefore relatively small. Firms like Criden & Love, the appellant here, step into the void, finding plaintiffs willing to sue and pairing them up with large antitrust specialists who can pursue their claim. They work for a fee, which can be substantial. In the case of Criden & Love, the typical referral fee is 12.5% of the larger firm's total fee.

In February of 2010, Criden & Love identified a plaintiff who was willing to challenge anticompetitive conduct in the titanium dioxide market. It referred this client, Isaac Industries, to two law firms, Berger Montague and Lieff Cabraser, at the usual 12.5% rate. Isaac Industries then brought its antitrust claim, alleging price-fixing for titanium dioxide. This case was consolidated with a similar case brought by Haley Paint.

In April of 2011, Lieff Cabraser became co-lead counsel over the consolidated action, known as the "TiO2 Litigation." A third firm, East Coast Colorants d/b/a/ Breen Color Concentrates ("Breen"), joined the case as a plaintiff a few months later. Breen had no connection with Criden & Love.

The trouble began in May of 2012, when an antitrust partner at Lieff Cabraser, Joseph Saveri, left to start his own enterprise, the Joseph Saveri Law Firm. Prior to starting his own firm, while still working at Lieff Cabraser, Saveri had filed a notice to appear on behalf of Isaac Industries. Saveri's new firm soon took on Breen, Isaac Industries' co-plaintiff, as a client in the TiO2 litigation, entering an appearance on its behalf on June 1, 2012. Saveri's firm never had an agreement with Isaac Industries, which was still represented by Lieff Cabraser.

Saveri thereafter sought the lucrative lead counsel role, which he obtained in August of 2012. No firms in the case objected to his motion to become lead. Ultimately, the class action was settled for a considerable sum of money. The attorneys' fees in the case totaled more than $54 million. As co-lead counsel, the Saveri Law Firm was awarded approximately $10 million, based entirely on work performed after Saveri left Lieff Cabraser. The other firms representing the plaintiffs, including Lieff Cabraser, Berger Montague, and Criden & Love, were also compensated for their work on the case. In addition, Criden & Love was paid referral fees from Lieff Cabraser and Berger Montague, pursuant to the referral agreements for Isaac Industries. All told, Criden & Love was awarded $ 2.8 million for its role in the case, including more than $900,000 for its referral agreements.

3

The dispute in this case centers around what happened after Saveri left Lieff Cabraser to start his own firm. Saveri called Kevin Love, a Criden & Love partner, to notify him of his impending departure. On the call, Mr. Love alleges that he told Saveri he would still expect payment of the referral fee that Criden & Love entered into with Lieff Cabraser. Both parties acknowledge that at no point during the call did Saveri accept the request for a referral fee. After Saveri's firm was added as co-lead counsel, Criden & Love sent two emails to Saveri attempting to confirm the referral agreement, but Saveri did not respond to either message. Once the case settled and the fees were distributed, Saveri communicated to Criden & Love that they had no agreement and no referral fee would be paid.

This case has taken a long and circuitous procedural road to the present appeal. First, Criden & Love began arbitration proceedings in Florida pursuant to the terms of its supposed referral agreement with the Saveri Law Firm. Saveri resisted arbitration and filed a claim for declaratory relief in federal court in California. The case progressed through discovery in California, and Saveri prevailed on all counts. On appeal, however, the Ninth Circuit concluded that the trial court lacked personal jurisdiction to hear the dispute and vacated its opinion. *Joseph Saveri Law Firm, Inc. v. Criden*, 696 Fed.Appx. 189, 192 (9th Cir. 2017).

Saveri then began his action anew in the federal district court in Maryland, seeking a declaration that the Saveri Law Firm was not subject to any arbitration agreement with Criden & Love and owed no referral fee. Criden & Love answered the new complaint and asserted several counterclaims of its own. These counterclaims, all of which purport to

4

establish Saveri's liability for the referral agreement, range from contract to equitable theories to fraud.

Once again, the court held for Saveri on all counts. *Joseph Saveri Law Firm, Inc. v. Michael E. Criden, PA*, 2017 WL 3917003 (D. Md. Sept. 7, 2017). On Criden & Love's contract theories, the court noted *inter alia* that the parties had never formed an express or implied contract. On the equitable claims, the court held that the "equity does not favor Criden & Love." *Id*. Saveri was only compensated for work after leaving Lieff Cabraser, while Criden & Love was paid both for its own work on the case and for its referral of Isaac Industries. Finally, the court rejected Criden & Love's fraud claim, finding the argument that Saveri's failure to strike an appearance on behalf of Isaac Industries constituted fraud to be "unavailing." *Id*. This appeal followed.

## II.

The appellant asserts a number of claims in this case, all of which ask for the same thing: a referral fee payment from Saveri's law firm. Whether presented as a contract claim, a claim for equitable relief, or a fraud claim, there is simply no basis on this record for finding the appellant entitled to such a payment.

## A.

We begin with appellant's contract claims. It is a bedrock principle of law—so simple it barely needs stating—that a contract cannot be formed by offer alone; there must also be acceptance by the offeree. *See Donovan v. RRL Corp.*, 27 P.3d 702, 815 (Cal. 2001); *Porte v. General Boiler Casing Co., Inc.*, 396 A.2d 1090, 1094 (Md. 1979).

5

Here there was no acceptance by Saveri. The parties in this case agree that they had no express contract. Although Criden & Love's email may be considered an offer to enter into a referral agreement, Saveri at no point expressly accepted the terms. Instead, Criden & Love argues that an implied contract was formed through Saveri's actions. It points specifically to Saveri's move for co-lead counsel status while representing Isaac Industries as member of the class. Because, C&L argued, this was after it had made its offer by phone and email, Saveri's actions constituted implied acceptance of the offer.

But this is too slender a reed to manifest acceptance. Indeed, Saveri's Notice of Appearance was on behalf of a completely different client, Breen, which bore no relevant connection to C&L. If anything, Saveri's Notice of Appearance implied a rejection of C&L's offer. Saveri's relationship to Isaac Industries was identical to his relationship to all other class members; he never represented the company's individual interest. That role continued to be filled by his old firm, Lieff Cabraser, which paid C&L the full fee the firm was owed.

Both parties here are sophisticated actors and repeat players in the market for antitrust litigation. Both could have done more to clarify the terms of the relationship between them, and both failed to do so. It is not the job of the court to do this for them. In the absence of any sign that Saveri accepted the terms offered by Criden & Love, we must leave the negotiation where we found it. As such, we see nothing more than an offer that was never accepted. Since there are no disputed facts that would lead to a different conclusion, the district court was correct to resolve this question as a matter of law.

B.

Criden & Love's equitable theories fare no better. As the district court noted, C&L is seeking a percentage of fees that were awarded to Saveri after he left Lieff Cabraser. *Joseph Saveri Law Firm, Inc. v. Michael E. Criden, PA*, 2017 WL 3917003 (D. Md. Sept. 7, 2017). Saveri earned these fees for work on behalf of Breen, a client with no connection to Lieff Cabraser or to C&L. *Id.* C&L's unjust enrichment claim fails, therefore, because it has no right to the funds that it argues that Saveri received unjustly. In order to prevail, C&L must show a "legal or equitable right" to the funds at issue that is superior to that of Saveri. Restatement (Third) of Restitution & Unjust Enrichment § 48 (2011). As explained above, it cannot do so.

The *quantum meruit* claim fails for a similar reason. C&L performed no work for which it was not compensated. C&L received $900,000 for referring its client to Lieff Cabraser, which was based in part on work Saveri did while at the latter firm. Equity does not give C&L a second claim against Saveri's fees.

C.

Finally, Criden & Love brings a fraudulent concealment claim. It claims that Saveri fraudulently concealed an intention not to pay C&L the referral fee. But of course, Saveri never suggested in any way that he *did* intend to pay the fee. And his Notice to Appear on behalf of Breen could easily be understood as an objective manifestation of an intent not to pay any referral fee since Breen was not the client C&L had referred.

7

## III.

For the foregoing reasons the judgment of the district court is

*AFFIRMED.*