Filed 5/23/23  Cenzone Tech v. Wu CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| CENZONE TECH., INC., <br><br> Plaintiff, Cross-defendant and Appellant; <br><br> JUNG FU WU, <br><br> Cross-defendant and Appellant, <br><br> v. <br><br> MARK KANE-BERMAN et al., <br><br> Defendants, Cross-complainants and Respondents. | D079891 <br><br><br> (Super. Ct. No. 37-2019-00029703-CU-BC-NC) |

APPEAL from a judgment of the Superior Court of San Diego County, Cynthia A. Freeland, Judge.  Affirmed.

Niddrie Addams Fuller Singh and Rupa G. Singh for Plaintiff, Cross-defendant, and Appellant Cenzone Tech., Inc., and Cross-defendant and Appellant Jung Fu Wu.

Duckor Metzger & Wynne, Tony R. Skogen, Jr., and Cathleen G. Fitch for Defendants, Cross-complainants and Respondents.

I

INTRODUCTION

Plaintiff and cross-defendant Cenzone Tech, Inc. (Cenzone) appeals an order granting a motion for entry of judgment filed by defendant and cross-complainant Mark Kane-Berman and cross-complainant Microbasics, LLC (Microbasics) under Code of Civil Procedure section 664.6. The trial court entered judgment after finding that the parties executed a valid settlement agreement resolving all causes of action between them, known and unknown. According to Cenzone, the settlement agreement was unenforceable because Cenzone never intended to settle causes of action that were known to the parties, but unasserted in their pleadings. Cenzone also argues the court erred by denying its motion for leave to amend its complaint to assert several new causes of action against Kane-Berman and Microbasics.

We conclude the trial court properly granted the motion for entry of judgment pursuant to the parties' settlement agreement, which clearly and unambiguously released *all* claims between the parties, known and unknown. Further, we conclude the court did not prejudicially err in denying Cenzone's motion for leave to amend its complaint. Therefore, we affirm the order denying Cenzone's motion for leave to amend its complaint and the order entering judgment pursuant to the parties' settlement agreement.

II

BACKGROUND

1. *The Pleadings*

Dr. Jung Fu Wu is the president and founder of Cenzone, a manufacturer of livestock feed supplements. Mark Kane-Berman owns and operates Microbasics, a company in the same line of business.

2

On June 7, 2019, Cenzone filed a complaint asserting four causes of action against Kane-Berman and Kane-Berman dba Microbasics. In its first cause of action, Cenzone alleged it loaned nearly $488,000 to Kane-Berman to buy real property in Jerome, Idaho. Cenzone claimed Kane-Berman breached a promissory note memorializing the loan by failing to repay about $255,000 in principal and not making required interest payments. In its second and third causes of action, Cenzone averred that Kane-Berman agreed to buy livestock feed products from Cenzone, but failed to pay for the products in full. The fourth cause of action asserted that Cenzone provided livestock feed products to Kane-Berman on an open book account and he owed a balance on the account. Cenzone prayed for damages of about $446,000. Kane-Berman answered by generally denying Cenzone's allegations.

On February 14, 2020, Kane-Berman and Microbasics filed a cross-complaint against Cenzone, Wu, and other cross-defendants. They asserted crossclaims for defamation, misappropriation of trade secrets, and goods and services rendered. Additionally, they requested declarations that they: (1) never agreed to the promissory note memorializing the loan for the acquisition of the Idaho property; (2) owed Cenzone no money under the promissory note; and (3) had sole ownership of the Idaho property.

2. *Cenzone's Motion for Leave to Amend its Complaint*

On October 21, 2020, Cenzone filed a motion for leave to amend its complaint by adding seven new causes of action against Kane-Berman and Microbasics. Cenzone requested leave to assert declaratory relief and fraudulent concealment causes of action based on allegations that Kane-Berman and Wu agreed to buy the Idaho property as equal partners, but Kane-Berman forged Wu's signature on documentation relating to the sale and, through this deceit, acquired sole title to the property. Cenzone also

3

sought to pursue a cause of action for misappropriation of trade secrets. Finally, Cenzone sought leave to assert civil theft, unfair business practices, trade libel, and intentional interference with prospective economic advantage causes of action based on allegations that Kane-Berman disparaged Cenzone and its feed supplements to customers. The proposed amended complaint prayed for damages exceeding $10,000,000.

On January 7, 2021, Kane-Berman opposed Cenzone's motion for leave to amend its complaint. He argued Cenzone should not be allowed to assert the declaratory relief and fraudulent concealment causes of action because the allegations underlying those causes of action—i.e., the allegations that Kane-Berman forged Wu's signature to take sole title to the Idaho property— were fatally inconsistent with the original complaint's allegations that Wu loaned him money to buy the property.

On January 8, 2021, Cenzone filed a so-called amendment to its motion for leave to amend its complaint. Through the amendment, Cenzone sought to add two additional causes of action (for a total of nine new ones): (1) a cause of action that Kane-Berman conspired to misappropriate Cenzone's trade secrets; and (2) a cause of action for violations of 15 U.S.C. § 1125, based on Kane-Berman's allegedly false statements to Cenzone's customers.

On February 4, 2021, Kane-Berman opposed Cenzone's amended motion for leave to amend its complaint. He reiterated his contentions from the previously filed opposition and further argued that the proposed amendment would severely prejudice him. He argued he would suffer prejudice because: (1) the new causes of action would substantially enlarge the scope of the case; (2) the amendment would delay trial, set for July 16, 2021, because it would unsettle the pleadings and necessitate new discovery; and (3) Cenzone unduly delayed seeking amendment. On the issue of undue

4

delay, Kane-Berman asserted Cenzone inexplicably waited fourteen months to pursue its proposed amendment, even though it was aware of the allegations underlying its new causes of action at the outset of the case.

On February 10, 2021, Cenzone filed a reply in support of its amended motion for leave to amend its complaint. It asserted there was no inconsistency between its claim that it loaned money to Kane-Berman to finance the acquisition of the Idaho property, on the one hand, and its claim that Wu and Kane-Berman agreed to take title to the property as equal partners, on the other hand. Further, it argued its failure to seek amendment earlier was "not due to a lack of diligence by Dr. Wu or Cenzone," but rather "due to concealment and malfeasance" by Kane-Berman.

On February 19, 2021, the court denied Cenzone's amended motion for leave to amend its complaint. The court found Cenzone was "partially dilatory in seeking leave to amend" because it "ha[d] at all times known, or should have known, of potential title issues" relating to the Idaho property. It also found Kane-Berman "recorded a special warranty deed" in 2013 reflecting that he took sole title to the property, and Cenzone, at a minimum, should have "discovered the title issue when it retained counsel in June 2019."

Further, the court found amendment was unwarranted because it would "undoubtedly" delay trial and severely prejudice Kane-Berman. The court reasoned the new causes of action would "entirely change the case's complexion," since they were "not even remotely related to the [initial] [c]omplaint's allegations." It found amendment would "substantially increase [Kane-Berman's] preparation costs and discovery burden[s]," and require "discovery from numerous third-party customers" and others. Additionally, the court predicted that amendment would result in various "procedural and

5

dispositive motions" targeting the new causes of action. For all these reasons, the court denied Cenzone's motion to file an amended complaint.

3. *The Mediation and Settlement Agreement*

At the joint request of the parties, the court continued trial from July 16, 2021, until September 17, 2021, to give the parties an opportunity to mediate their dispute.

On June 23, 2021, the parties and their respective counsel participated in a one-day mediation with a mutually selected mediator. At the end of the mediation, the parties reached a settlement, which they memorialized in a one-page agreement entitled, "Memorandum of Understanding" (MOU). Wu executed the MOU on behalf of himself and Cenzone, while Kane-Berman executed the MOU on behalf of himself and Microbasics.

The MOU states the parties "agreed to settle all claims between them, known and unknown …." Elsewhere, it provides that, "[e]ach party waives all claims, known and unknown, against all other Parties to the lawsuit." The MOU obligates the parties "to draft a long form settlement agreement based on" the MOU. However, it states that, "[i]n the event the parties are unable to agree on the final terms in a settlement agreement, [the] MOU will be enforceable and admissible in Court pursuant to Code of Civil Procedure section 664.6."

4. *The Purported Cancellation of the Settlement Agreement*

On August 10, 2021, Cenzone's counsel, Stephen C. Hinze, sent a letter to Kane-Berman's counsel, Tony R. Skogen, which purportedly "cancell[ed] the settlement," on grounds that the parties never had a "meeting of the minds." Hinze stated that Cenzone never intended to release claims it knew of, but had not asserted in its complaint—i.e., it did not intend to release the claims that were the subject of its motion for leave to amend the complaint.

6

Although the MOU released *all* claims between the parties, known and unknown, Hinze stated the release was a "mistake." According to Hinze, Wu had scheduled an appointment for after the parties' mediation, which he told Kane-Berman and Skogen about at the start of the mediation. Hinze stated Wu was "late to his appointment" by the time defense counsel's office prepared the MOU and, as a result, Wu only "quickly reviewed the [MOU] and signed it ...." He stated the MOU "contained a mistake that Dr. Wu and [Hinze] did not catch in the brief time [they] had to review it." He reiterated that Wu intended only to release unknown claims and known claims asserted in the complaint—not known, unasserted claims.

On August 18, 2021, Skogen sent a letter to Hinze rejecting the settlement cancellation. He stated, "there was clearly a meeting of the minds," as evidenced by the release of "all claims known and unknown" in the one-page MOU. He stated Wu "should not have scheduled another appointment inside the time [they] had agreed to mediate" and, "[i]f he felt rushed, that [was] on him." Further, he stated, "if [Wu] chose not to read the agreement, that [was] on him" as well.

5. *The Motion for Entry of Judgment*

On September 1, 2021, Kane-Berman and Microbasics filed an *ex parte* motion for entry of judgment under Code of Civil Procedure section 664.6. In their motion, they argued the MOU was an enforceable settlement agreement because it unambiguously released all claims between the parties, known and unknown. They argued Wu's alleged failure to read or understand the one-page MOU was immaterial because the release of claims in the MOU was "clear," Wu was solely responsible for any time constraints he may have experienced, and Wu was represented in the mediation by Hinze, who also had the opportunity to read and review the MOU. Together with the motion,

7

Kane-Berman and Microbasics filed a declaration from their counsel, Skogen. The MOU, the settlement cancellation letter, and the letter rejecting the settlement cancellation were attached as exhibits to Skogen's declaration.

On September 2, 2021, the day of the scheduled hearing on the *ex parte* motion, Cenzone filed a declaration from Hinze purporting to summarize the mediation. He averred that, before the mediation began, "Wu advised all parties that he had to be at a meeting by 1:30 that afternoon." According to Hinze, the meeting "was with an attorney concerning the claims" Cenzone had tried to amend into its complaint. Hinze further averred that, during the mediation, Wu offered to release Cenzone's known claims in return for $95,000, payable in 60 days, but "with the express condition that the only [known] claims to be dismissed were those asserted in the complaint." He alleged Kane-Berman made an oral counteroffer that modified only the timing of the settlement payments, not the release of claims. He stated Wu was running late for his meeting by the time Wu accepted Kane-Berman's counteroffer and defense counsel's office prepared the MOU. He averred, "Review of the memorandum of settlement was done in less than a minute primarily to check that the payments agreed to were accurate." He asserted the MOU was "entered by mistake or inadvertence engendered by the stress and agitation" caused by the timing of Wu's scheduled meeting.

The court declined to decide the motion on an *ex parte* basis and "set[] [the] matter for a noticed motion." Thereafter, Kane-Berman and Microbasics relied on their previously filed *ex parte* motion for entry of judgment as the moving papers for their noticed motion.

On September 17, 2021, Cenzone filed its opposition to the now-noticed motion for entry of judgment. Cenzone repeated its claim that the MOU was invalid because there was no meeting of the minds. Additionally, it argued

8

the MOU was the result of an attorney mistake and, therefore, it was unenforceable under Code of Civil Procedure section 473, subdivision (b).

In its opposition, Cenzone again purported to summarize the mediation, claiming Wu offered to release only known claims that were asserted in the complaint, Kane-Berman made a counteroffer changing only the timing of the settlement payments, Wu accepted the counteroffer, and Wu signed the MOU under time pressure. Together with its opposition, Cenzone filed declarations from Wu and Hinze averring that, "[b]efore the mediation commenced ... Wu advised all parties that he had to be at a meeting" that afternoon. The declarations also purported to summarize various statements and communications made by the mediation participants during the mediation.

On September 24, 2021, Kane-Berman and Microbasics filed a reply and evidentiary objections to the Wu and Hinze declarations. Of relevance here, they argued the portions of the declarations purporting to summarize the mediation were inadmissible under Evidence Code section 1119. That statute renders inadmissible any "evidence of anything said or any admission made for the purpose of, in the course of, or pursuant to, a mediation or a mediation consultation," and provides that "[a]ll communications, negotiations, or settlement discussions by and between participants in the course of a mediation or a mediation consultation shall remain confidential." (Evid. Code, § 1119, subds. (a), (c).)

On October 1, 2021, the court sustained the evidentiary objections to the Wu and Hinze declarations and granted the motion for entry of judgment. The court found the MOU was a "valid and enforceable settlement agreement between the parties, and that judgment should be entered thereon under CCP § 664.6(a)." It determined the language of the MOU, including the

9

release of claims, was "clear," "explicit," and "sufficiently certain." And it found the MOU was enforceable, notwithstanding the "attorney fault" provision of Code of Civil Procedure section 473, subdivision (b), because that provision "applies only to defaults, default judgments, or dismissals entered as a result of an attorney's mistake, inadvertence, surprise, or neglect."

Cenzone appeals.[1]

### III

### DISCUSSION

1. *The Trial Court Properly Granted the Motion for Entry of Judgment*

Cenzone challenges the entry of judgment on grounds that the parties did not mutually consent to the release of claims in the MOU. In particular, Cenzone asserts its consent was lacking, and the trial court should have refused entry of judgment, because Wu (Cenzone's agent) and Hinze (Cenzone's legal counsel) labored under a unilateral mistake concerning the scope of the MOU's release of claims. Cenzone's arguments are unavailing.

A. *Legal Principles*

" '[Code of Civil Procedure] [s]ection 664.6 permits a court to enter judgment pursuant to the terms of a settlement if the parties stipulate orally before the court or in writing to settle all or part of a case. [Citation.]' [Citation.] Section 664.6 provides in pertinent part: 'If parties to pending litigation stipulate ... orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the

---

[1]    We construe the order granting the motion for entry of judgment as a final appealable judgment under Code of Civil Procedure section 904.1, subdivision (a), because the trial court never entered a formal judgment after granting the motion, and the order finally adjudicated all of the causes of action at issue in the litigation. (*Critzer v. Enos* (2010) 187 Cal.App.4th 1242, 1250–1252; *Hines v. Lukes* (2008) 167 Cal.App.4th 1174, 1183.)

terms of the settlement.' " (*Leeman v. Adams Extract & Spice, LLC* (2015) 236 Cal.App.4th 1367, 1373–1374, italics omitted (*Leeman*).)

"A settlement agreement is interpreted according to the same principles as any other written agreement. [Citation.] It must be interpreted to give effect to the mutual intent of the parties as it existed at the time, insofar as that intent can be ascertained and is lawful. [Citations.] If the language of the agreement is clear and explicit and does not involve an absurdity, determination of the mutual intent of the parties and interpretation of the contract is to be based on the language of the agreement alone." (*Leeman, supra*, 236 Cal.App.4th at p. 1374.)

"A trial court's factual findings on a motion to enforce a settlement pursuant to [Code of Civil Procedure] section 664.6 are subject to limited appellate review and will not be disturbed if supported by substantial evidence. [Citation.] 'To the extent we engage in the proper interpretation of section 664.6, however, we exercise our independent review.' " (*Machado v. Myers* (2019) 39 Cal.App.5th 779, 790–791.)

B. *The MOU Is Enforceable Notwithstanding Cenzone's Claim That Wu Was Mistaken About the Content of the MOU*

According to Cenzone, the trial court erred in enforcing the MOU because Cenzone did not consent to the MOU's release of claims. Cenzone states that Wu mistakenly believed the release of claims applied only to the parties' unknown claims and their known, asserted claims—not their known, unasserted claims. Cenzone argues that Wu purportedly left the mediation to meet with his legal counsel to discuss the prospect of filing a new lawsuit involving the claims Cenzone tried, but was unable, to pursue against Kane-Berman and Microbasics in the current case. Cenzone states, "Wu could not have intended to release claims that he did, in fact, leave the mediation to pursue[.]" As we will explain, Wu's purportedly mistaken belief about the

11

content of the MOU did not entitle Cenzone to rescind or resist enforcement of the MOU.

"A factual mistake by one party to a contract, or unilateral mistake, affords a ground for rescission in some circumstances. … Civil Code section 1577 states in relevant part: 'Mistake of fact is a mistake, not caused by the neglect of a legal duty on the part of the person making the mistake, and consisting in: [¶] 1. An unconscious ignorance or forgetfulness of a fact past or present, material to the contract ….' " (*Donovan v. RRL Corp.* (2001) 26 Cal.4th 261, 278 (*Donovan*); see *Estate of Eskra* (2022) 78 Cal.App.5th 209, 221–223 (*Eskra*) [a party's mistaken belief about the content of an agreement is a mistake of fact].)

"Where the [party seeking to enforce the contract] has no reason to know of and does not cause the [mistaken party's] unilateral mistake of fact, the [mistaken party] must establish the following facts to obtain rescission of the contract:  (1) the [mistaken party] made a mistake regarding a basic assumption upon which the [mistaken party] made the contract; (2) the mistake has a material effect upon the agreed exchange of performances that is adverse to the [mistaken party]; (3) the [mistaken party] does not bear the risk of the mistake; and (4) the effect of the mistake is such that enforcement of the contract would be unconscionable." (*Donovan, supra*, 26 Cal.4th at p. 282.)  We will assume for purposes of this appeal that the first, second, and fourth *Donovan* factors are satisfied.  Even so, Cenzone has not established that Wu's purported unilateral mistake about the content of the MOU would entitle Cenzone to rescind the MOU or halt its enforcement.

As an initial matter, Cenzone presented no admissible evidence showing that Kane-Berman or Microbasics—the parties seeking to enforce the MOU—knew of, or should have known of, Wu's mistake.  We will assume,

as Wu and Hinze averred in their declarations, that Wu told Kane-Berman and Skogen that he had a meeting scheduled after the parties' mediation. However, nothing in these declarations, or any of Cenzone's other evidence, suggests that Wu contemporaneously told Kane-Berman or Skogen that his post-mediation meeting was *with his legal counsel.* Nor did these declarations, or any of Cenzone's other evidence, state or imply that Wu told Kane-Berman or Skogen that *the purpose of his meeting was to discuss the filing of a separate lawsuit* against Kane-Berman and/or Microbasics. Thus, even if Wu did tell Kane-Berman and Skogen about the meeting he had scheduled after the mediation, that fact alone does not in any way suggest that Kane-Berman, Microbasics, or Skogen were aware that Cenzone was mistaken about the scope of the release of claims in the MOU.[2]

Because Kane-Berman and Microbasics did not know of, or have reason to know of, the unilateral mistake, Cenzone would be entitled to rescind the MOU based on its mistake only if it did not bear the risk of the mistake (in addition to satisfying the other *Donovan* criteria). (*Donovan, supra*, 26 Cal.4th at p. 282.) "[T]he risk of a mistake must be allocated to a party where the mistake results from that party's neglect of a legal duty." (*Id.* at p. 283.) Here, the risk of a mistake must be allocated to Cenzone—and Cenzone alone—because Cenzone (through its agent, Wu) neglected its legal duty by failing to fully read and understand the MOU before signing it.

---

[2]    Cenzone does not argue that Kane-Berman or Microbasics knew of the alleged mistake, or should have known of the alleged mistake, for any reason other than Wu's pre-mediation statement that he had a meeting later that day. In particular, Cenzone does not rely on any declarations purporting to summarize the parties' mediation communications. Nor could Cenzone rely on such evidence, as the trial court sustained objections to all of Cenzone's evidence that ostensibly summarized the parties' mediation communications. Those rulings are not challenged on appeal.

The case of *Stewart v. Preston Pipeline Inc.* (2005) 134 Cal.App.4th 1565 (*Stewart*) is instructive. There, the parties to a personal injury case mediated their dispute and executed a written settlement agreement to resolve all of their claims, but the plaintiff later disavowed the settlement. (*Id.* at pp. 1569–1570.) The trial court entered summary judgment for the defendants based on the settlement agreement and the plaintiff appealed on grounds that there was no mutual assent to the settlement agreement. (*Id.* at p. 1570.) In particular, the plaintiff argued he did not consent to the settlement agreement because he did not read it, he did not understand it, and he only executed it at the behest of his legal counsel. (*Id.* at p. 1587.)

The Court of Appeal rejected the plaintiff's lack of consent argument, determined the settlement agreement was enforceable, and affirmed the summary judgment order in favor of the defendants. (*Stewart, supra*, 134 Cal.App.4th at pp. 1585–1589.) The court reasoned, "We need look no further than the third *Donovan* factor to conclude that plaintiff raised no triable issue of material fact concerning possible rescission of the settlement agreement.[] 'It is well established, in the absence of fraud, overreaching or excusable neglect, that one who signs an instrument may not avoid the impact of its terms on the ground that he failed to read the instrument before signing it.' [Citations.] [¶] Plaintiff has cited no California cases (and we are aware of none) that stand for the extreme proposition that a party who fails to read a contract but nonetheless objectively manifests his assent by signing it—absent fraud or knowledge by the other contracting party of the alleged mistake—may later rescind the agreement on the basis that he did not agree to its terms. To the contrary, California authorities demonstrate that a contracting party is not entitled to relief from his or her alleged unilateral mistake under such circumstances." (*Id.* at pp. 1588–1589, fn. omitted.)

14

In *Eskra, supra*, 78 Cal.App.5th 209, the Court of Appeal reached a similar conclusion under analogous circumstances. In that case, a wife filed a probate petition seeking to be appointed the personal representative of her late husband's estate, even though she and her husband had executed a premarital agreement terminating the wife's rights to the husband's estate in the event the couple divorced or the husband predeceased the wife. (*Id.* at pp. 215–216.) The wife introduced extrinsic evidence that she and her husband both told their respective attorneys that the agreement should apply only in the case of divorce, not death; however, the agreement was never amended as the couple requested. (*Id.* at pp. 217–218.) Contrary evidence was also admitted showing that the husband in fact intended for the agreement to apply either in the event of divorce or his death. (*Id.* at pp. 218–219.) Ultimately, the couple signed the agreement without reviewing it during a meeting with the husband's attorney that lasted for less than five minutes. (*Id.* at p. 219.) The trial court denied the wife's petition for appointment as personal representative and found she was not entitled to rescind the agreement on grounds of unilateral mistake. (*Id.* at pp. 220–221.)

The Court of Appeal affirmed. (*Eskra, supra*, 78 Cal.App.5th 209.) It reasoned that, "[e]ven if [the husband] was aware of [the wife's] mistake, she [was] not entitled to relief if she bore the risk of the mistake due to neglect of a legal duty." (*Id.* at p. 225.) The court concluded the wife bore the risk of mistake due to a neglect of a legal duty based on her failure to read the agreement or meet separately with her legal counsel. (*Id.* at p. 229.) As the court stated, "the failure to read a contract generally constitutes neglect of a legal duty under [Civil Code] section 1577." (*Ibid.*; see also *id.* at p. 229 [wife's "failure to read the Agreement and consult with [her attorney] means that she *did* bear the risk of her mistake"]; *Casey v. Proctor* (1963) 59 Cal.2d

15

97, 104–105 [plaintiff's failure to read release of claims or, if he did read it, to understand the release of claims, constituted a neglect of legal duty precluding rescission]; Rest. 2d Contracts, § 157, com. b, p. 417 ["Generally, one who assents to a writing is presumed to know its contents and cannot escape being bound by its terms merely by contending that he did not read them; his assent is deemed to cover unknown as well as known terms."].)

Based on these authorities, we conclude the trial court properly rejected Cenzone's claim that the unilateral mistake of its representative (Wu) permitted it to rescind the MOU or otherwise stop its enforcement. There was no admissible evidence showing that Kane-Berman, Microbasics, or Skogen placed time constraints or pressure on Wu to review or execute the MOU quickly; rather, any time constraints Wu experienced were self-imposed. Cenzone also does not argue that Kane-Berman, Microbasics, or Skogen perpetrated fraud or placed Wu in duress during the negotiation of the settlement or the preparation of the MOU. Nonetheless, Wu apparently did not read the MOU closely or, to the extent he read it at all, he did not review or understand the release of claims contained therein. If Wu did not read or understand the one-page MOU, Cenzone (Wu's principal) neglected its legal duty and must be allocated the risk of Wu's mistake.

Further, insofar as Wu labored under a mistaken belief about the contents of the MOU, Cenzone produced no admissible evidence tending to show that Kane-Berman or Microbasics were aware of this mistake. Indeed, Cenzone's evidence establishes, at most, that Wu simply announced he had a meeting scheduled after the mediation. Wu's statement, even if he made it,

16

did not convey to Kane-Berman or Microbasics that Wu was mistaken about the content of the MOU or the release of claims in particular.[3]

Under these circumstances, the trial court properly rejected Cenzone's claim that there was no meeting of the minds and correctly found that the parties mutually consented to the MOU, including the MOU's unambiguous release of all claims between the parties, known and unknown.[4]

C. *The MOU Is Enforceable Despite Cenzone's Claim that Hinze Was Mistaken About the Content of the MOU*

Next, Cenzone contends the court erred when it enforced the MOU because Cenzone's legal counsel, Hinze, shared Wu's mistaken belief about the release of claims. In light of Hinze's mistake, Cenzone argues the court should have exercised its discretionary authority under Code of Civil

---

[3] Cenzone requests judicial notice of a complaint it filed against Kane-Berman and Microbasics on June 6, 2022, in which Cenzone asserts the claims it unsuccessfully tried to amend into the current litigation. We deny the request, as the complaint is irrelevant to the current proceeding.

[4] At times in its briefs, Cenzone states the release of claims is reasonably susceptible to the meaning Wu attributed to it, which could be interpreted to mean the parties mutually assented to a limited release encompassing only unknown claims and known, unasserted claims. However, we do not construe Cenzone as arguing that the parties mutually assented to such a release. Cenzone repeatedly argues there was "a misunderstanding or lack of meeting of the minds between the parties," describes the MOU as "defective," and refers to the release as a "mistake." As these characterizations make clear, Cenzone does not maintain that the parties mutually intended to execute a limited release of claims. Even if we did construe Cenzone as making such an argument, the argument would fail. Neither the plain text of the release of claims nor Cenzone's evidence suggests that Kane-Berman or Microbasics intended for the release to apply only to unknown claims and known, unasserted claims.

17

Procedure section 473, subdivision (b), to relieve Cenzone from entry of judgment under Code of Civil Procedure section 664.6.

Code of Civil Procedure section 473, subdivision (b), "provides for two distinct types of relief—commonly differentiated as 'discretionary' and 'mandatory'—from certain prior actions or proceedings in the trial court. 'Under the discretionary relief provision, on a showing of "mistake, inadvertence, surprise, or excusable neglect," the court has discretion to allow relief from a "judgment, dismissal, order, or other proceeding taken against" a party or his or her attorney. Under the mandatory relief provision, on the other hand, upon a showing by attorney declaration of "mistake, inadvertence, surprise, or neglect," the court shall vacate any "resulting default judgment or dismissal entered." ' " (*Luri v. Greenwald* (2003) 107 Cal.App.4th 1119, 1126 (*Luri*).)

As noted, Cenzone claims the trial court erred in declining to exercise its authority under the discretionary relief provision of Code of Civil Procedure section 473, subdivision (b), to relieve Cenzone from entry of judgment due to Hinze's mistake or excusable neglect. However, this argument fails because Cenzone never asked the court to exercise its discretionary authority in this manner. In its opposition to the motion for entry of judgment, Cenzone quoted the *mandatory* relief provision, in full, and then asked the court to relieve it from entry of judgment. But it omitted any quotation or reference to the *discretionary* relief provision.[5] Additionally, Cenzone never argued that Hinze committed excusable neglect,

---

5    In its appellate reply brief, Cenzone states the opposition brief it filed in the trial court quoted Code of Civil Procedure section 473, subdivision (b), "in full, including language recognized to encompass the statute's mandatory and discretionary relief provisions." Cenzone is mistaken. It did not quote or in any other way reference the discretionary relief provision.

18

which is a basis for relief that is available exclusively under the discretionary relief provision.

" 'Appellate courts are loath to reverse a judgment on grounds that the opposing party did not have an opportunity to argue and the trial court did not have an opportunity to consider. [Citation.] In our adversarial system, each party has the obligation to raise any issue or infirmity that might subject the ensuing judgment to attack. [Citation.]' [Citation.] ' "The purpose of this rule is to encourage parties to bring errors to the attention of the trial court, so that they may be corrected." [Citation.]' [Citation.] [¶] Issues presented on appeal must actually be litigated in the trial court—not simply mentioned in passing. ' "[W]e ignore arguments, authority, and facts not presented *and litigated* in the trial court." ' " (*Natkin v. Cal. Unemployment Ins. Appeals Bd.* (2013) 219 Cal.App.4th 997, 1011.)

Further, a "trial court is not required to consider the availability of relief under the discretionary or mandatory provisions of [Code of Civil Procedure section] section 473 in the absence of any request for relief under those grounds." (*Luri, supra*, 107 Cal.App.4th at p. 1126.) For example, in *Luri*, our colleagues in Division 5 of the Second District determined that a trial court did not err in declining to grant relief under the mandatory relief provision of section 473, subdivision (b), where the appellant requested relief only under the statute's discretionary relief provision. (*Id.* at pp. 1124–1128; see *Pacifica First National, Inc. v. Abekasis* (2020) 50 Cal.App.5th 654, 658 (*Pacifica*) ["To the extent [defendant] is arguing he was entitled to mandatory relief from default under section 473 of the Code of Civil Procedure, this argument is incorrect. [Defendant's] motion referenced only discretionary relief under this provision; it does not discuss mandatory relief."].)

Because Cenzone never asked the trial court for relief under the discretionary relief provision of Code of Civil Procedure section 473, subdivision (b), Cenzone "cannot now complain such relief was not awarded." (*Pacifica, supra*, 50 Cal.App.5th at p. 658.) And, in the context of this case, Cenzone's failure to request relief under the discretionary relief provision precludes it from obtaining reversal of the entry of judgment.[6]

2. *The Trial Court Did Not Commit Reversible Error in Denying Cenzone's Amended Motion for Leave to Amend the Complaint*

In addition to challenging the entry of judgment, Cenzone argues the trial court abused its discretion in denying Cenzone's request to amend its complaint to assert nine new causes of action against Kane-Berman and Microbasics. Cenzone asserts amendment was warranted because it discovered the facts giving rise to the new causes of action after filing the complaint and amendment would only require a "short trial continuance."

We will assume arguendo that the court erred in denying Cenzone's amended motion for leave to amend its complaint. Even so, we will not reverse the denial order because the alleged error was harmless. The California Constitution "generally 'prohibits a reviewing court from setting aside a judgment due to trial court error unless it finds the error prejudicial.' " (*F.P. v. Monier* (2017) 3 Cal.5th 1099, 1108, citing Cal. Const. art. VI, § 13.) It requires us " 'to affirm the judgment, notwithstanding error, if error has not resulted "in a miscarriage of justice." ' " (*F.P.*, at p. 1108; see also Code Civ. Proc., § 475 ["No judgment, decision, or decree shall be reversed or affected by reason of any error, ruling, instruction, or defect, unless it shall appear from the record that such error, ruling, instruction, or

_____

[6] Cenzone does not assert that the trial court erred in denying its request for relief under the statute's mandatory relief provision.

20

defect was prejudicial"].)  " '[A] "miscarriage of justice" should be declared only when the court, "after an examination of the entire cause, including the evidence," is of the "opinion" that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.' " (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800.)

Here, it is not reasonably probable Cenzone would have obtained a more favorable outcome but-for the order denying amendment because the causes of action Cenzone sought to amend into the case fall squarely within the MOU's release of claims, which broadly applies to *all* claims between the parties, whether or not those claims are asserted in the present case.  Thus, the proposed causes of action would have been subject to the entry of judgment under the MOU, even if the court had allowed Cenzone to amend them into the case.  (See *Levy v. Skywalker Sound* (2003) 108 Cal.App.4th 753, 771 [purported error denying amendment to complaint was harmless because "granting leave to amend would merely have delayed the inevitable"].)  Because Cenzone's proposed causes of action would have been subject to the entry of judgment, whether they were amended into the case or not, Cenzone suffered no prejudice from the allegedly erroneous denial of its motion for leave to amend its complaint.

IV

DISPOSITION

The judgment is affirmed. Respondents are entitled to their costs on appeal.

McCONNELL, P. J.

WE CONCUR:


HUFFMAN, J.


IRION, J.